# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAYNE PHARMA LLC, <br><br> Plaintiff, <br><br> v. <br><br> THERAPEUTICSMD, INC., <br><br> Defendant. | C.A. No. 25-670-RGA |

## DEFENDANT THERAPEUTICSMD'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS

**SMITH KATZENSTEIN & JENKINS LLP**

Julie M. O'Dell (No. 6191)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
jmo@skjlaw.com
dat@skjlaw.com

*Attorneys for Defendant TherapeuticsMD, Inc*

Dated: July 28, 2025

**TABLE OF CONTENTS**

TABLE OF CITATIONS ............................................................................................................. iii

I.   NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.  SUMMARY OF ARGUMENT ........................................................................................ 1

III. STATEMENT OF FACTS ................................................................................................ 2

      1.   Lang Pharma Nutrition, Inc. ..................................................................... 3

      2.   Sever Pharma Solutions AB ...................................................................... 4

IV.  ARGUMENT ..................................................................................................................... 5

   A.  THE SECOND ACTION SHOULD BE DISMISSED UNDER THE FIRST-TO-FILE RULE ............................................................................................ 5

   B.  MAYNE'S FRAUD CLAIM SHOULD BE DISMISSED WITH PREJUDICE ....................................................................................................... 7

      1.   The bootstrapped fraud claim should be dismissed ................................. 7

      2.   The fraud claims should also be dismissed for failing to plead separate damages ........................................................................................ 9

      3.   The fraud claim also is not pleaded with particularity ............................ 10

      4.   Three independent grounds for dismissal ............................................... 11

V.   CONCLUSION ................................................................................................................ 11

# TABLE OF CITATIONS

**Cases**

*Brasby v. Morris*,
　2007 WL 949485 (Del. Super. Ct. Mar. 29, 2007) .................................................................. 9

*Cornell Glasgow, LLC v. La Grange Properties, LLC*,
　2012 WL 2106945 (Del. Super. Ct. June 6, 2012) ............................................................. 7, 9

*Crosley Corp. v. Hazeltine Corp.*,
　122 F2d 925 (3d Cir. 1941) ..................................................................................................... 5

*EZLinks Golf, LLC v. PCMS Datafit, Inc.*,
　2017 WL 1312209 (Del. Super. Ct. Mar. 13, 2017) ............................................................... 9

*FMC Corp. v. AMVAC Chem. Corp.*,
　379 F. Supp. 2d 733 (E.D. Pa. 2005) ...................................................................................... 5

*Fowler v. UPMC Shadyside*,
　578 F.3d 203 (3d Cir. 2009) .................................................................................................... 7

*Greenstar, LLC v. Heller*,
　934 F. Supp. 2d 672 (D. Del. 2013) ...................................................................................... 10

*Hiller & Arban, LLC v. Reserves Mgmt., LLC*,
　2016 WL 3678544 (Del. Super. Ct. July 1, 2016) .................................................................. 8

*PureShares, LLC v. Zimnisky*,
　2025 WL 606903 (D. Del. Feb. 25, 2025) .............................................................................. 9

*Sapp v. Indus. Action Servs., LLC*,
　2024 WL 3444633 (D. Del. July 17, 2024) ............................................................................ 9

*United States ex rel. Bookwalter v. UPMC*,
　946 F.3d 162 (3d Cir. 2019) .................................................................................................. 10

*Williams v. Atl. Recording Corp.*,
　2021 WL 3403933 (D. Del. Aug. 4, 2021) ............................................................................. 6

**Rules**

Fed. R. Civ. P. 8 ............................................................................................................................. 7

Fed. R. Civ. P. 9 ........................................................................................................................... 10

I. **NATURE AND STAGE OF THE PROCEEDINGS**

On April 8, 2025, Defendant TherapeuticsMD, Inc. ("TXMD") filed a Complaint in *TherapeuticsMD, Inc. v. Mayne Pharma, LLC*, C.A. No. 25-440-RGA (the "First Action"). (C.A. No. 25-440-RGA, D.I. 1) The Complaint in that matter alleged various breaches of contract associated with a 2022 Transaction Agreement ("TA"). (*Id.*) In response, on May 30, 2025, Plaintiff Mayne Pharma, LLC ("Mayne") moved to dismiss the complaint in the First Action (*id.*, D.I. 10) and also moved to compel submission of matters for an expert determination or alternatively to compel arbitration and to stay the First Action, (*id.*, D.I. 8). Additionally, Mayne filed the complaint in this case, Civil Action No. 25-670-RGA (the "Second Action"), alleging breaches of the very TA at issue in the First Action. (Second Action, D.I. 1) Both matters request a bench trial.

In the First Action, TXMD filed a first amended complaint ("FAC") on June 20, 2025. (First Action, D.I. 16) Mayne moved to dismiss the FAC on July 21, 2025 (*id.*, D.I. 21) with TXMD's answering brief due on August 28, 2025, (*id.*, June 17, 2025, Order). Mayne has not yet answered the FAC in the First Action. Also, as of July 21, 2025, Mayne's motion to compel is fully briefed. (*Id.*, D.I. 8, 9, 18, 19)

TXMD moves to dismiss the Second Action under the first-to-file rule and also moves to dismiss Count IV of Mayne's complaint in the Second Action for failure to state a claim.

II. **SUMMARY OF ARGUMENT**

1. The Second Action should be dismissed. The first-filed rule prevents litigants from increasing the complexity and cost of litigation by filing subsequent duplicative actions between the same parties and arising out of the same transaction or occurrence raised in a first litigation. The First Action and the Second Action involve the same parties and the same transaction or

occurrence—the Transaction Agreement. Therefore, Mayne's claims in this Second Action are essentially counterclaims to the First Action and should be dismissed.

2. Mayne's fraud claim (Count IV) in the Second Action should be dismissed for failure to state a claim. Under Delaware law, fraud claims must allege a breach of a duty independent of those already imposed by contract. Here, Mayne's fraud claim realleges breaches of §§ 7.11 and 7.15 of the TA, which are contractual duties that already form the basis for two of Mayne's breach of contract claims (Counts I and II) in the Second Action. Additionally, the fraud claim fails to allege damages separate from breach of contract and is not pleaded with particularity. Under Delaware law, this fraud claim should be dismissed.

## III. STATEMENT OF FACTS

In December 2022, TXMD and Mayne (collectively, "the Parties") entered into transaction and license agreements transferring several pharmaceutical product lines from TXMD to Mayne. As part of this transaction, Mayne paid TXMD $140 million plus an amount based upon the valuation of the ongoing operations that were transferred. Given the complexities of distributing these products, the final value of the line items to the "Closing Net Working Capital" was to be determined in a series of true ups over a 2-year period following the closing date. In the First Action, the FAC alleges that as part of settling the initial true up in December 2023, and based upon Mayne's representations at the time, TXMD paid Mayne approximately $5.5 million. (First Action, D.I. 16 at ¶ 108) In a subsequent updated closing statement in January 2024, Mayne demanded additional money. (*Id.* at ¶ 49) And in February 2025, Mayne asserted that the total processed and unprocessed returns had ballooned from $3.9 million to $20.8 million and that – as a result – TXMD should pay Mayne an additional $16.9 million. (*Id.* at ¶ 51) This volume of returns appears to exceed Mayne's own January 2024 estimates of TXMD's Inventory in the supply chain as of the closing date, which Mayne had valued at approximately $18.3 million and is greatly in

excess of the 5% returns rate estimated and negotiated by the Parties as part of the working capital. (*Id.* at ¶ 52) At present, there remain three Closing Net Working Capital line items for the Parties to resolve: Allowance for Returns, Allowance for Payer Rebates, and Wholesale Distributor Fees. (*Id.* at ¶¶ 24–38) The FAC in the First Action alleges six causes of action arising out of the Transaction Agreement, including two counts of breach of contract, two counts of breach of the implied covenant, fraudulent inducement, and unjust enrichment. (*Id.* at ¶¶ 53–127)

The complaint in this Second Action, filed on May 30, 2025, alleges Mayne's claims arising out of the TA. These include 3 counts of breach of contract (Second Action, D.I. 1 at ¶¶ 51–61) and a claim for fraudulent inducement, (*id.* at ¶¶ 62–67). On June 2, 2025, Mayne's parent company, Mayne Pharma Group Limited (*id.*, D.I. 3), announced the filing of the Second Action, stating that "Mayne Pharma's complaint asserts claims against TXMD for breach of contract and fraud based on allegations that TXMD concealed information about certain commercialization assets it sold to Mayne on 4 December 2022." Mayne Pharma Limited, *Update on US legal proceeding with TherapeuticsMD Inc.* (Jun. 2, 2025), https://www.maynepharma.com/investor-relations/company-announcements/. The announcement also stated that Mayne "is seeking more than US$$11.5 million in damages it incurred as a result of TXMD's alleged misrepresentations about the assets." (*Id.*)

Two of Mayne's contract claims (Counts I and II) are relevant to the arguments presented herein with respect to Mayne's fraud claim (Count IV) and are discussed further below. A fact common to all claims in Mayne's complaint is that the parties signed the TA on December 4, 2022, and expected to close the deal on or about December 30, 2022. (Second Action, D.I. 1 at ¶ 2, 16)

### 1. Lang Pharma Nutrition, Inc.

First, in Count I, Mayne alleges that on December 5, 2022—the day after the parties signed the TA—Lang Pharma Nutrition, Inc. notified TXMD by email that it intended to terminate its

3

supply contract to TXMD. (*Id.* at ¶ 25) The complaint alleges that "[a]lthough TXMD included Lang as a Material Suppliers in the TXMD Disclosure Schedules [on December 4, 2022], TXMD failed to disclose Lang's notice of discontinuation to Mayne," which Mayne contends is a breach of § 7.15 of the TA. (*Id.* at ¶ 26) Mayne claims damages of at least $5,078,000 for lost profits and increased costs. (*Id.* at ¶¶ 27, 54)

Mayne also alleges generally, with respect to its fraud claim, that TXMD knew prior to December 4, 2022, that Lang would discontinue its supply and deliberately made a "false assurance that Lang would not stop or decrease the rate of its supply to TXMD" with the specific intent "to induce Mayne into signing the agreement." (*Id.* at ¶ 25) However, Mayne does not identify any specific statements by TXMD to Mayne other than TXMD's representations and warranties in § 7.15 of the TA. (*Id.* at ¶ 63 (parroting the language of § 7.15); *see also id.*, Ex. A at § 7.15)

### 2.   Sever Pharma Solutions AB

Second, with respect to Count II, Mayne alleges that TXMD had amended its pricing terms with Sever Pharma Solutions AB for the production of ANNOVERA® but did not disclose these new terms "prior to Closing." (*Id.* at ¶ 31) Mayne alleges that TXMD breached § 7.11 of the TA by providing Mayne "an outdated and inaccurate copy of the Sever Agreement[.]" (*Id.* at ¶¶ 33–34) Mayne further alleges that the newer agreement amounts to a 50% price increase for ANNOVERA®, which has increased Mayne's supply costs by at least $5,473,000. (*Id.* at ¶¶ 32, 36, 58)

Mayne's fraud claim in relation to Sever is that TXMD allegedly "purposely misled Mayne by providing an outdated and inaccurate copy of the Sever Agreement" (*id.* at ¶33) and "actively concealed the truth" by "listing and sharing with Mayne an outdated and inaccurate version of the Sever Agreement[,]" (*id.* at ¶ 64). Mayne does not identify any specific statements by TXMD to

4

Mayne other than the representations and warranties in § 7.11 of the TA. (*Id.* at ¶¶ 64–65 ("TXMD fraudulently induced Mayne into entering the Transaction Agreement by representing false material facts as true, including by representing that TXMD had provided true, correct and complete copies of all agreements, including all amendments and amendments thereto"); *see also id.*, Ex. A at § 7.11 (representing and warranting in Article 7 of the TA that "TXMD has provided true, correct and complete copies of all agreements, including all amendments and amendments thereto[.]"))

IV.   **ARGUMENT**

    A.   **The Second Action Should Be Dismissed Under the First-to-File Rule**

Under the first-to-file rule, Mayne's claims in this case should be dismissed. In the Third Circuit, "[t]he party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter." *Crosley Corp. v. Hazeltine Corp.*, 122 F2d 925, 930 (3d Cir. 1941). "The first-to-file rule is used to dismiss or stay a later-filed action." *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 737 (E.D. Pa. 2005).

In the First Action, TXMD alleges breach of contract and other claims for relief centered around the TA between the parties. (*See generally* First Action, D.I. 1, Ex. A) Mayne emphasizes the significance of this contract to the dispute between the parties by attaching the TA to its first motion to dismiss in the First Action (*id*, D.I. 11, Ex. A), to its motion to compel (*id.*, D.I. 9, Ex. A), and to its renewed motion to dismiss, (*id.*, D.I. 22, Ex. A). Similarly in this Second Action, Mayne also attaches the TA to the complaint. (Second Action, D.I. 1, Ex. A) Mayne alleges that this Court's jurisdiction over TXMD (a Nevada corporation) in this Second Action is based on "Section 13.10" of the TA. (*Id.*, D.I. 1 at ¶ 15) The complaint in this Second Action alleges causes of action arising out of §§ 7.11, 7.12, 7.15, and 9.1 of the TA. (*See generally id.*) Therefore, both

5

the First Action and the Second Action allege claims arising out of the TA that should be considered together in a single litigation.

Moreover, since both actions involve the same parties, this Second Action should be dismissed and not stayed. *Cf. Williams v. Atl. Recording Corp.*, 2021 WL 3403933, at *3 (D. Del. Aug. 4, 2021) (staying later-filed action pending a determination of issues raised in the earlier-filed matter, because the court in the earlier-filed matter did not have jurisdiction over the defendants in the later-filed case). Mayne will not be prejudiced by dismissal and can raise its claims when it answers the FAC in the First Action. This approach would promote judicial economy and reduce the risk of duplication between the First and Second Actions.

To the extent that Mayne argues that the FAC in the First Action is based solely upon disputes over § 5.3 of the TA, which relates to the "Closing Net Working Capital," this is wrong. First, the FAC alleges at least two claims for breach of contract (Count III) and breach of the implied covenant (Count IV) that are wholly unrelated to § 5.3 of the TA. (First Action, D.I. 16 at ¶¶ 77–104) Second, the complaint in this Second Action alleges specific money damages, such as $975,586 for what Mayne contends is excessive inventory at the time of closing. (Second Action, D.I. 1 at ¶¶ 59–61 (Count III)) As alleged in the FAC in the First Action, the amount of TXMD Inventory in the supply chain is a disputed fact that is related to the resolution of the "Closing Net Working Capital." (*E.g.*, First Action, D.I. 16 at ¶¶ 27–52) This is a question that is common to the "Closing Net Working Capital" calculations and should therefore be considered together.[1] For these reasons, Mayne's argument that the FAC in the First Action solely relates to "Net Working Capital" and that Mayne's complaint in this Second Action raises "different" questions is a

---

[1] To the extent the Court grants Mayne's motion to compel in the First Action, (First Action, D.I. 8) at least Count III of the complaint in the Second Action should be included in the referral to an expert determination or arbitration.

6

distinction without a difference. Mayne's claims in this Second Action arise from the same case or controversy centered around the December 2022, TA—a dispute already raised between the same parties in the First Action. Under the first-to-file rule, this Second Action should be dismissed.

      **B.**    **Mayne's Fraud Claim Should Be Dismissed With Prejudice**

Should the Court determine that the first-to-file rule does not apply to this Second Action, Count IV of Mayne's complaint in the Second Action should be dismissed for failure to state a claim. Mayne's bootstrapped fraud claim is insufficient as a matter of Delaware law, because Mayne alleges breaches of duties already imposed by contract and alleged in Counts I and II. Alternatively, this fraud claim does not plead damages separate and distinct from the breach of contract damages and is not pleaded with the required specificity under Rule 9(b).

Federal Rule of Civil Procedure 8 requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. *Id.* 12(b)(6). When evaluating a motion to dismiss, a district court must accept all well-pleaded facts as true and "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citation and quotation marks omitted).

      **1.**    **The bootstrapped fraud claim should be dismissed**

Mayne impermissibly bootstraps its fraud claim by recycling its breach of contract claims alleged in Counts I and II as fraudulent inducement. This claim should be dismissed.

In Delaware, "a plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally must sue in contract, and not in tort." *Cornell Glasgow, LLC v. La Grange Properties, LLC*, 2012 WL 2106945, at *7 (Del. Super. Ct. June 6, 2012) (internal quotation marks

7

omitted) (citing *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007)). "Indeed, '[a] breach of contract claim cannot be turned into a fraud claim simply by alleging that the other party *never intended to perform*.'" *Hiller & Arban, LLC v. Reserves Mgmt., LLC*, 2016 WL 3678544, at *4 (Del. Super. Ct. July 1, 2016) (emphasis in original) (citations omitted). "Ultimately, when . . . a complaint alleges fraud contemporaneously with breach of contract, the fraud claim will survive only if premised 'on conduct that is separate and distinct from the conduct constituting breach.'" *Id.* (citations omitted).

Here, Mayne's allegations of fraudulent inducement are based on the same factual allegations as its breach of contract claims. In Count I Mayne alleges that TXMD breached § 7.15 of the TA by failing to disclose that Lang discontinued its supply agreement on the day *after* the Parties signed the TA. (Second Action, D.I. 1 at ¶¶ 51–54) Mayne also alleges in Count IV that this same conduct related to Lang constitutes fraudulent inducement without identifying any separate and distinct conduct other than the representations in the TA and associated documents. (*Id.* at ¶ 63)

Similarly, in Count II, Mayne alleges breach of contract associated with required disclosure of the Sever Agreement under § 7.11 of the TA. (*Id.* at ¶¶ 55-58) Mayne alleges that TXMD breached this portion of the contract by "providing an outdated and inaccurate copy of the Sever Agreement[.]" (*Id.* at ¶ 33) In Count IV, Mayne alleges that this same conduct also constitutes fraudulent inducement without identifying any separate and distinct conduct other than the representations in Article 7 of the TA and associated documents. (*Id.* at ¶¶ 64–65)

Because Mayne's allegations of fraud stem solely from the disclosures in the TA and associated documents, Mayne's complaint fails to state a claim for fraudulent inducement and should be dismissed. *See PureShares, LLC v. Zimnisky*, 2025 WL 606903, at *8 (D. Del. Feb. 25,

8

2025) (citation omitted) ("I agree with Defendant that Plaintiffs have only told 'the story of ... [D]efendant's failure to perform under the contract' in their Complaint."); *Sapp v. Indus. Action Servs., LLC*, 2024 WL 3444633, at *4 (D. Del. July 17, 2024) ("I conclude that the fraudulent inducement claim, as it relates to the Earn-Out Consideration Promises, is duplicative of the breach of contract claim."); *Cornell Glasgow*, 2012 WL 2106945, at *9 (finding that "defendants never intended to perform" on the contract and that their breach of the contract "cannot give rise to an actionable claim for fraud."); *Brasby v. Morris*, 2007 WL 949485, at *8 (Del. Super. Ct. Mar. 29, 2007) ("The Court finds no reason to allow Plaintiff to pursue a claim of fraud where the injury alleged is best addressed by the law of contract.").

### 2. The fraud claims should also be dismissed for failing to plead separate damages

Alternatively, Mayne's fraud claim should be dismissed for failing to plead damages separate and apart from the damages claimed in the breach of contract claims. Delaware courts require plaintiffs "to plead damages causes separate and apart from the alleged breach [of contract] damages." *Cornell Glasgow*, 2012 WL 2106945, at *8. Here, in Counts I and II, which claim breach of contract, Mayne pleads damages associated with lost profits and increased costs. (Second Action, D.I. 1 at ¶¶ 27, 32, 36, 54, 58) In Count IV, Mayne pleads damages "for all financial losses . . . , including out-of-pocket expenses, lost profits, and punitive damages." (*Id.* at ¶ 67) These damages claims differ in that Mayne's fraud claim also pleads punitive damages, but the mere addition of punitive damages is insufficient to state a claim separate and distinct from the breach of contract claim. On this alternate basis, Mayne's fraud claim should be dismissed. *See EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017) (footnote citations omitted) ("EZLinks's mere addition of punitive damages to its fraudulent inducement charge is not enough to distinguish it from the contract damages."); *see also*

9

*Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672, 697 (D. Del. 2013) (citing *Cornell Glasgow,* 2012 WL 2106945, at *8) ("Greenstar's claim for fraud also fails for another reason. Greenstar failed to demonstrate damages caused by the fraud 'separate and apart from' the alleged breach of contract damages.").

### 3. The fraud claim also is not pleaded with particularity

Mayne's fraud claim also should be dismissed, because it is not pleaded with any particularity. Under the rules "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b)'s particularity requirement requires a plaintiff to allege 'all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the events at issue.'" *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (citations and internal quotation marks omitted).

In this case, with respect to Lang, Mayne alleges that the Parties signed the TA on December 4, 2022, and that Lang notified TXMD of its termination *the next day*, on December 5, 2022. The only specific misrepresentation alleged is with respect to TXMD's representations and warranties in the TA itself. (Second Action, D.I. 1 at ¶ 25) Mayne does not allege any specific representations by TXMD with respect to Lang, made prior to December 4, that were intended to induce Mayne to sign the TA. Similarly, with the Sever Agreement, Mayne alleges generally that the representations and warranties in the TA related to Sever were false, because TXMD attached an outdated version of the Sever Agreement to the TA. (*Id*. at ¶¶ 31–34, 64–65) But Mayne does not allege any specific misrepresentations by TXMD about the Sever Agreement prior to December 4, 2022, that were intended to induce Mayne to sign the TA. Also on this basis, Count IV should be dismissed.

### 4. Three independent grounds for dismissal

The above presents three grounds on which to dismiss Count IV: bootstrapping, lack of separate damages, and lack of particularity. Each of these independently supports dismissal of Count IV, and on this basis, Mayne's fraud claim should be dismissed.

## V. CONCLUSION

For the reasons stated above, Mayne's complaint in this Second Action should be dismissed. Alternatively, Count IV of Mayne's complaint should be dismissed with prejudice.

Dated: July 28, 2025

SMITH KATZENSTEIN & JENKINS LLP

*/s/ Daniel A. Taylor*
Julie M. O'Dell (No. 6191)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
jmo@skjlaw.com
dat@skjlaw.com

*Attorneys for Defendant TherapeuticsMD, Inc*