IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAYNE PHARMA LLC,

               *Plaintiff,*

    v.

THERAPEUTICSMD, INC.,

               *Defendant.*

C.A. No. 1:25-cv-00670-RGA

**PLAINTIFF MAYNE PHARMA LLC'S ANSWERING BRIEF IN
OPPOSITION TO DEFENDANT THERAPEUTICSMD, INC.'S MOTION TO DISMISS**

OF COUNSEL:

**ARNOLD & PORTER KAYE
SCHOLER LLP**
Aaron F. Miner (admitted *pro hac vice*)
Matthew F. Medina (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Phone: 212.836.8000
Fax: 212.836.8689
aaron.miner@arnoldporter.com
matthew.medina@arnoldporter.com

August 18, 2025

**MORRIS, NICHOLS, ARSHT &
TUNNELL LLP**
S. Mark Hurd (#3297)
Jacob M. Perrone (#7250)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Phone: (302) 658-9200
shurd@morrisnichols.com
jperrone@morrisnichols.com

*Counsel for Plaintiff Mayne Pharma LLC*

## TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.    SUMMARY OF ARGUMENT ................................................................................... 1

III.   STATEMENT OF FACTS ......................................................................................... 2

IV.    LEGAL STANDARD ............................................................................................... 4

V.     ARGUMENT .......................................................................................................... 4

    A.     THE FIRST-TO-FILE RULE DOES NOT APPLY ................................................... 4

        1.     The Two Cases Were Not Filed in *Different* Federal District Courts. ............ 5

        2.     The Two Cases at Issue Are Not Duplicative. ................................................. 6

    B.     MAYNE ADEQUATELY PLED ITS FRAUDULENT INDUCEMENT
       CLAIM ............................................................................................................... 10

        1.     Mayne Alleged Fraudulent Inducement with Particularity ........................... 10

        2.     Mayne's Fraud Claim Is Not a Bootstrapped Breach of Contract Claim ...... 13

        3.     Mayne's Fraud Claim Alleges Separate Damages ......................................... 16

VI.    CONCLUSION ...................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*4C, Inc. v. Pouls*,
  2014 WL 1047032 (D. Del. Mar. 5, 2014) ....................................................................17, 18

*Abbott Lab'ys v. Johnson & Johnson, Inc.*,
  524 F. Supp. 2d 553 (D. Del. 2007).......................................................................................5

*Abry P'rs V, L.P. v. F & W Acq. LLC*,
  891 A.2d 1032 (Del. Ch. 2006)..............................................................................11, 12, 13

*AFH Holding Advisory, LLC v. Emmaus Life Sci., Inc.*,
  2013 WL 2149993 (Del. Super. Ct. May 15, 2013) .............................................................17

*Alpizar-Fallas v. Favero*,
  908 F.3d 910 (3d Cir. 2018)....................................................................................................4

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
  295 F. Supp. 2d 393 (D. Del. 2002).......................................................................................5

*Arctic Cat, Inc. v. Polaris Indus. Inc.*,
  2014 WL 5325361 (D. Minn. Oct. 20, 2014) .........................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................4

*Bristol-Myers Squibb Co. v. Merck & Co., Inc.*,
  2016 WL 3769344 (D. Del. July 13, 2016) ............................................................................7

*Chavez v. Dole Food Co., Inc.*,
  836 F.3d 205 (3d Cir. 2016) (en banc)................................................................................4, 5

*Columbus Life Ins., Co. v. Wilmington Tr. Co.*,
  2023 WL 1956868 (Del. Super. Ct. Feb. 13, 2023)..............................................................14

*Cornell Glasgow, LLC v. La Grange Properties, LLC*,
  2012 WL 2106945 (Del. Super. Ct. June 6, 2012) ....................................................16, 17, 18

*Crosley Corp. v. Hazeltine Corp.*,
  122 F.2d 925 (3d Cir. 1941)....................................................................................................6

*Desert Equities, Inc. v. Morgan Stanley Leveraged Eq. Fund, II, L.P.*,
   624 A.2d 1199 (Del. 1993) ...................................................................................11

*E.E.O.C. v. Univ. of Pa.*,
   850 F.2d 969 (3d Cir. 1988) ............................................................................4, 5, 7

*EZLinks Golf, LLC v. PCMS Datafit, Inc.*,
   2017 WL 1312209 (Del. Super. Ct. Mar. 13, 2017) ...........................................18

*FMC Corp. v. AMVAC Chem. Corp.*,
   379 F. Supp. 2d 733 (E.D. Pa. 2005) ...................................................................6

*Freedom Mortg. Corp. v. Irwin Fin. Corp.*,
   2009 WL 763899 (D. Del. Mar. 23, 2009) ..........................................................5, 7

*Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*,
   2018 WL 6311829 (Del. Ch. Dec. 3, 2018) .........................................................10

*Grider v. Keystone Health Plan Cent., Inc.*,
   500 F.3d 322 (3d Cir. 2007) .................................................................................7

*Hiller & Arban, LLC v. Reserves Management LLC*,
   2016 WL 3678544 (Del. Super. Ct. July 1, 2016) ..........................................15, 16

*Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*,
   502 F. App'x 201 (3d Cir. 2012) ...........................................................................5

*Jones v. Singing River Health Servs. Found.*,
   2015 WL 12672726 (S.D. Miss. June 5, 2015) ....................................................6

*Liborio III, L.P. v. Artesian Water Co., Inc.*,
   306 A.3d 529 (Del. 2023) ...................................................................................10

*Lord v. Souder*,
   748 A.2d 393 (Del. 2000) ...................................................................................10

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
   2015 WL 11018002 (D. Minn. Apr. 20, 2015) ......................................................6

*Mosaic US Holdings LLC v. Atlas Tech. Sols., Inc.*,
   2025 WL 483064 (Del. Super. Ct. Jan. 22, 2025) ...............................................14

*Olin Corp v. Continental Cas. Co.*,
   2011 WL 1337407 (D. Nev. Apr. 6, 2011) ...........................................................6

*Online HealthNow, Inc. v. CIP OCL Invs., LLC*,
   2021 WL 3557857 (Del. Ch. Aug. 12, 2021) ..........................................11, 12, 13

*Pilot Air Freight, LLC v. Manna Freight Sys.*,
    2020 WL 5588671 (Del. Ch. Sept. 18, 2020) ........................................................14

*Prairie Cap. III, L.P. v. Double E Hldg. Corp.*,
    132 A.3d 35 (Del. Ch. 2015)........................................................................................11

*Premier Payments Online, Inc. v. Payment Sys. Worldwide*,
    848 F. Supp. 2d 513 (E.D. Pa. 2012) ...........................................................................6

*Puff Corp. v. KandyPens, Inc.*,
    2020 WL 6318708 (D. Del. Oct. 28, 2020) ..................................................................7

*Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*,
    2020 WL 5816759 (Del. Ch. Sept. 30, 2020) .............................................................13

*Sheehy v. Santa Clara Valley Transp. Auth.*,
    2014 WL 2526968 (N.D. Cal. June 4, 2014) ...............................................................6

*Smash Franchise P'rs, LLC v. Kanda Hldgs., Inc.*,
    2020 WL 4692287 (Del. Ch. Aug. 13, 2020) .............................................................13

*Swipe Acq. Corp. v. Krauss*,
    2020 WL 5015863 (Del. Ch. Aug. 25, 2020) ..............................................13, 14, 15

*TherapeuticsMD, Inc. v. Mayne Pharma LLC*,
    No. 1:25-cv-440-RGA, D.I. 16 (D. Del. June 20, 2025) ..........................7, 8, 9, 10

*Time Warner Cable, Inc. v. GPNE Corp.*,
    497 F. Supp. 2d 584 (D. Del. 2007)..............................................................................5

*United States ex rel. Bookwalter v. UPMC*,
    946 F.3d 162 (3d Cir. 2019)..................................................................................4, 10

*Van Roy v. Sakhr Software Co.*,
    2014 WL 3367275 (D. Del. July 8, 2014) ..................................................................11

*Williams v. Atl. Recording Corp.*,
    2021 WL 3403933 (D. Del. Aug. 4, 2021) ...................................................................6

## **Other Authorities**

Fed. R. Civ. P 9(b) ..............................................................................................................4

Fed. R. Civ. P. 12(b)(6)........................................................................................................4

## I.      NATURE AND STAGE OF THE PROCEEDINGS

In December 2022, Plaintiff Mayne Pharma LLC ("Mayne" or "Plaintiff") and Defendant TherapeuticsMD, Inc. ("Defendant" or "TXMD") entered into a Transaction Agreement (D.I. 1-1) (the "Transaction Agreement") and License Agreement whereby Mayne agreed to purchase from TXMD exclusive licenses for certain health products (the "Products") and assets, like supply and manufacturing agreements, that would support the operation and commercialization of the product portfolio (the "Commercialization Assets"), for a total payment of over $153 million.

On, May 30, 2025, Mayne filed a complaint (D.I. 1) ("Complaint" or "Compl.") asserting claims for breach of contract and fraudulent inducement. Mayne alleges, among other things, that TXMD: misrepresented that Lang Pharma Nutrition, Inc. ("Lang") would continue supplying products; failed to disclose a material amendment to its contract with Sever Pharma Solutions AB f/k/a QPharma AB ("Sever") extending new and unfavorable pricing terms; and misrepresented the amount of inventory maintained at several distributors. *Id.* The parties stipulated to extend Defendant's deadline to respond from June 24, 2025, to July 28, 2025. D.I. 8. On July 28, 2025, TXMD filed a motion to dismiss the complaint and opening brief.  D.I. 11, 12 ("OB").

## II.      SUMMARY OF ARGUMENT

1. The first-to-file rule does not apply because the two cases at issue (a) are pending in the same federal district court and (b) are not duplicative.

2. Mayne's fraud claim properly states a claim because it alleges TXMD's fraudulent inducement with sufficient particularity, is not improperly "bootstrapped" from Mayne's breach of contract claims, and alleges damages separate from those of the breach of contract claims.

### III.   STATEMENT OF FACTS

Mayne is a specialty pharmaceutical company focused on commercializing branded and generic pharmaceuticals. Compl. ¶ 9. On December 4, 2022, Mayne entered a series of agreements with TXMD, including the Transaction Agreement, to purchase exclusive licenses for a portfolio of women's health products alongside certain "Transferred Assets." *Id.* ¶ 16. These assets included inventory, supplier relationships, and regulatory filings to support the operations and commercialization of the portfolio. *Id.* The Transferred Assets included "Transferred Agreements," which included third-party manufacturing and supply agreements. *Id.* ¶17.

Understanding the supply agreements and supplier relationships included in the Transaction Agreements was critical for Mayne to successfully commercialize the Products. *Id.* ¶ 19. As such, the Transaction Agreement listed all Transferred Agreements that would govern the relationships between Mayne and the suppliers of Products post-closing and also included a disclosure schedule listing all suppliers of the Products for the past three fiscal years. *Id.* ¶ 20. TXMD represented to Mayne that no supplier had notified TXMD that it would stop or decrease the supply of Products. *Id.* Mayne relied on this representation to its detriment. *Id.* TXMD's material misrepresentations and omissions concerning the Transferred Agreements and TXMD's suppliers were revealed after closing, having already injured and continuing to injure Mayne to this day. *Id.* ¶ 21.

One of TXMD's misrepresentations regarded Lang, a supplier of prenatal vitamins to TXMD. *Id.* ¶ 23. In Section 7.15 of the Transaction Agreement executed on December 4, 2022, TXMD falsely represented that as of the closing date of the transaction, none of the relevant suppliers, including Lang, had notified TXMD that they would stop or decrease the rate at which they had historically supplied products to TXMD. *Id.* ¶ 24. Yet prior to the execution of the Transaction Agreement, upon information and belief, Lang had already engaged in

communications with TXMD that Lang intended to terminate its supply of product to TXMD starting in June 2023. *Id.* ¶ 25. And just one day after execution of the Transaction Agreement, and still prior to the closing of the deal, Lang conveyed notice of the intended termination to TXMD. *Id.* TXMD's false assurance that Lang would not terminate or decrease its supply to TXMD was intended to induce Mayne into signing the Transaction Agreement on December 4, 2022, and TXMD's subsequent failure to disclose Lang's notice of discontinuation provided on December 5, 2022 was a breach of Section 7.15 of the Transaction Agreement. *Id.* ¶¶ 25-26.

Another misrepresentation involved TXMD's commercial supply agreement with Sever (the "Sever Agreement"), dated September 28, 2018. *Id.* ¶ 29. The Sever Agreement was listed as a Transferred Agreement in Section 7.11(a) of the TXMD Disclosure Schedules and TXMD provided Mayne with a supposed copy of the Sever Agreement before Closing. *Id.* ¶ 30. In reality, TXMD had already extended new and unfavorable pricing terms to Sever before Closing, and, on information and belief, TXMD's discussions with Sever about new pricing terms had started prior to the execution of the Transaction Agreement on December 4, 2022. *Id.* ¶¶ 30-31. As TXMD knew of these negotiations over new pricing terms, its misrepresentation of the Sever Agreement was intended to induce Mayne into signing the agreement. *Id.* ¶ 31. Mayne discovered post-Closing that TXMD amended the terms of the Sever Agreement by agreeing to a price increase of more than 50% and thus that the purported copy of the Sever Agreement TXMD provided to Mayne before Closing was not true, correct, and complete. *Id.* ¶¶ 32-33. Failure to disclose the material amendment or modification of the Sever Agreement is a breach of Section 7.11 of the Transaction Agreement. *Id.* ¶ 34. Further, extension of the new pricing terms in and of itself is a breach of the representation in Section 7.11 itself that "[e]ach other party to each Transferred Agreement is not in material breach or default thereunder." *Id.* ¶ 35.

## IV.    LEGAL STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must assume that well-pled factual allegations in the complaint are true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). An actionable claim will plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In pleading fraud, Fed. R. Civ. P 9(b) applies, and "a party must state with particularity the circumstances constituting fraud or mistake." Particularity requires that a pleading provide sufficient detail to "place the defendant on notice of the precise misconduct with which it is charged" and to include "some measure of substantiation" in the fraud allegation. *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (cleaned up); *see also United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (pleading fraud requires the "who, what, when, where and how of the events at issue") (internal quotation marks and citations omitted).

## V.    ARGUMENT

### A.    THE FIRST-TO-FILE RULE DOES NOT APPLY

The first-to-file "rule is a comity-based doctrine stating that, when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 210 (3d Cir. 2016) (en banc); *see also E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 972, 977 (3d Cir. 1988) (the first-filed rule is intended to "encourage[] sound judicial administration and promote[] comity among federal courts of equal rank" by "prevent[ing] the judicial embarrassment of conflicting judgments"). Under this rule, the court where the action was filed first generally has priority to decide the case. *Chavez*, 836 F.3d at 210. Courts retain discretion to depart from the rule in the presence of rare or extraordinary circumstances, inequitable conduct, bad faith, forum shopping, or when the second-filed action

has progressed further. *E.E.O.C.*, 850 F.2d at 972. In applying the first-filed rule, the second-filed court invoking the rule has the discretion to stay, transfer, or dismiss—either with or without prejudice—the case before it. *Chavez*, 836 F.3d at 216-17.

1.    The Two Cases Were Not Filed in <em>Different</em> Federal District Courts.

The first-to-file rule only applies when duplicative cases are successively filed in different federal district courts. *See, e.g.*, *Chavez*, 836 F.3d at 210 ("[W]hen duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority."); *Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 205 (3d Cir. 2012) (first-filed rule "ordinarily counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district courts"); *E.E.O.C*, 850 F.2d at 971 ("first-filed" rule prevents "subsequent prosecution of similar cases ... in different federal courts"); *Freedom Mortg. Corp. v. Irwin Fin. Corp.*, 2009 WL 763899, at *4 (D. Del. Mar. 23, 2009) (purpose of the first-to-file rule is "to avoid differing outcomes on the same issue by two sister courts, thereby minimizing duplicative litigation in different fora, and saving judicial resources"); *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 588 (D. Del. 2007) ("The court finds that the present matter should be dismissed in accordance with the first-to-file rule to prevent duplicative lawsuits by different federal courts."); *Abbott Lab'ys v. Johnson & Johnson, Inc.*, 524 F. Supp. 2d 553, 557 (D. Del. 2007) (first-to-file rule applies "[w]here proceedings involving the same parties and issues are pending simultaneously in different federal courts"); *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 396 (D. Del. 2002) ("The first-filed rule is a judicial construct aimed at conserving judicial resources and safeguarding litigants by preventing concurrent duplicative litigation of the same issues between the same parties in more than one federal court.").

TXMD has failed to cite a single case that supports the proposition that the first-to-file rule may be applied where the two cases at issue are filed in the same federal district court.[1] In fact, each of Defendant's cited authorities make clear that the rule only applies where successive cases are filed in *different* federal courts. *See* OB at 5-7; *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 737 (E.D. Pa. 2005) ("[W]here there are parallel proceedings in different federal courts, the first court in which jurisdiction attaches has priority to consider the case."); *Williams v. Atl. Recording Corp.*, 2021 WL 3403933, at *3 (D. Del. Aug. 4, 2021) ("The 'first-to-file' rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency."); *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941) (holding "that the court below had the power to enjoin the parties within its jurisdiction from bringing other suits upon the same cause of action in another federal district court"). Here, because the TXMD-filed-case and the Mayne-filed-case are pending in the same federal district court before the same federal judge, the first-to-file rule does not apply.

## 2.    The Two Cases at Issue Are Not Duplicative.

Even if the first-to-file rule applied when cases are filed in the same federal court—a proposition for which TXMD cites no support—the cases at issue must involve the "same parties

---

[1] Courts regularly refuse to apply the first-to-file rule where the cases are pending in the same federal district court. *See, e.g.*, *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 523 (E.D. Pa. 2012) (denying motion to dismiss pursuant to the first-to-file rule and reasoning that "[movant] has not cited, nor is this Court aware of, any case in which a federal court within the Third Circuit has applied the first-filed rule when two actions were pending before the same court"); *Arctic Cat, Inc. v. Polaris Indus. Inc.*, 2014 WL 5325361, at *14 (D. Minn. Oct. 20, 2014) (explaining that "the first-filed rule is not intended to govern the resolution of two lawsuits filed in the same district and assigned to the same judge"); *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 2015 WL 11018002, at *25 (D. Minn. Apr. 20, 2015) ("[T]he first-filed rule, and the compelling circumstances exception to the first-filed rule, do not apply here because both lawsuits were filed in the same District and are before the same district court judge."); *Jones v. Singing River Health Servs. Found.*, 2015 WL 12672726, at *3 (S.D. Miss. June 5, 2015); *Sheehy v. Santa Clara Valley Transp. Auth.*, 2014 WL 2526968, at *2 (N.D. Cal. June 4, 2014); *see also Olin Corp. v. Continental Cas. Co.*, 2011 WL 1337407, at *2 (D. Nev. Apr. 6, 2011).

and the same issues." *EEOC*, 850 F.2d at 971. Although "[c]omplete identity" of the issues is not required, *Freedom Mortg. Corp.*, 2009 WL 763899, at *4, application of the first-to-file rule requires that one case is "materially on all fours" with the other (*i.e.*, is "truly duplicative"), such that "a determination in one action leaves little or nothing to be determined in the other." *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 334 n.6 (3d Cir. 2007) (internal citations omitted); *see also Puff Corp. v. KandyPens, Inc.*, 2020 WL 6318708 (D. Del. Oct. 28, 2020) (considering *Grider*). Thus, "[w]hen the claims ... or requested relief differ, deference [to the first-to-file rule] may not be appropriate." *Bristol-Myers Squibb Co. v. Merck & Co., Inc.*, 2016 WL 3769344, at *1 n.1 (D. Del. July 13, 2016).

Here, as demonstrated in the chart below, the only overlap between the two cases is the parties, the jurisdiction, and the underlying contract. TXMD's First Amended Complaint focuses on purchase price adjustment claims tied to allegations that Mayne oversold market demand, and an unrelated claim related to the transfer of the NDC Code. *See TherapeuticsMD, Inc. v. Mayne Pharma LLC*, No. 1:25-cv-440-RGA, D.I. 16 (D. Del. June 20, 2025) ("FAC"). In stark contrast, Mayne's Complaint relates to TXMD's conduct and misrepresentations with respect to specific third parties. The parties' claims do not "hinge" on the enforceability of the same contractual provisions, *see Freedom Mortg. Corp.*, 2009 WL 763899 at *5, nor would a resolution of one suit eliminate most or all of the issues to be determined in the other, *see Grider*, 500 F.3d at 334 n.6. Rather, the two cases involve different sections of the contract, different theories of liability, different dispute mechanisms, different time periods, different conduct, and different damages.

|  | *TherapeuticsMD, Inc. v. Mayne Pharma LLC,* No. 1:25-cv-00440-RGA | *Mayne Pharma LLC v. TherapeuticsMD, Inc.,* No. 1:25-cv-00670-RGA |
|---|---|---|
| **Court** | District of Delaware | District of Delaware |
| **Parties** | TherapeuticsMD, Inc. (Plaintiff) Mayne Pharma LLC (Defendant) | TherapeuticsMD, Inc (Defendant) Mayne Pharma LLC (Plaintiff) |
| **Claims** | (1) Breach of Contract (overselling demand leading to increased returns of TXMD Inventory)

(2) Breach of the Implied Covenant of Good Faith and Fair Dealing (overselling demand leading to increased returns of TXMD Inventory)

(3) Breach of Contract (NDC Labeler Code transfer)

(4) Breach of the Implied Covenant of Good Faith and Fair Dealing (NDC Labeler Code transfer)

(5) Fraudulent Inducement (settlement agreement executed in Dec. 2023)

(6) Unjust Enrichment (overselling demand leading to increased returns of TXMD Inventory) | (1) Breach of Contract (misrepresenting to Mayne that Lang Pharma would continue to supply products to TXMD and Mayne)

(2) Breach of Contract (failing to inform Mayne of the modification of material pricing terms between TXMD and Sever Pharma Solutions AB f/k/a QPharma AB)

(3) Breach of Contract (maintaining inventory of Annovera, Bijuva, and other products at distributors in excess of 45 days)

(4) Fraudulent Inducement (Transaction Agreement executed in Dec. 2022) |
| **Relevant Sections of Agreement** | Section 5.3 | Sections 7.11, 7.12, 7.15, and 9.1 |
| **Time Period** | Post-contract execution.

"On information and belief, <u>over the course of 2023 (and possibly in 2024 or 2025)</u> Mayne sold more Mayne Licensed Products than was justified by market demand and the inventory already in the channel that could meet the market demand, including the TXMD Inventory in the channel." FAC ¶ 42. | Prior to or at closing.

"Lang provided notice to TXMD of its intent to discontinue its supply of product to TXMD beginning in June 2023. This notice was conveyed to TXMD <u>prior to the closing</u>, including by e-mail on December 5, 2022." Compl. ¶ 25. |

| | | |
|---|---|---|
| | "<u>On or about January 3, 2023</u>, unbeknownst to TXMD and without TXMD's consent, Mayne transferred the NDC Labeler Code (50261) back to TXMD." FAC ¶ 84.<br><br>"Had TXMD known, in <u>December 2023</u>, that Mayne had oversold market demand and was, throughout 2023, accepting the return of all, or nearly all, of the TXMD Inventory in the supply chain as of the Closing Date, it would not have agreed, in December 2023, to settle the Closing Net Working Capital on the terms it did, including paying money to Mayne as part of the settlement." FAC ¶ 114.<br><br>(all emphasis added) | "TXMD's provision of new pricing terms to Sever began in discussions between TXMD and Sever regarding potential amendments to the Sever Agreement <u>before December 4, 2022</u>, when Mayne and TXMD executed the Transaction Agreement." Compl. ¶ 31.<br><br>"<u>At the time of closing</u>, TXMD maintained inventory for the product ANNOVERA® in the channel for 63 days and inventory for the product BIJUVA® in the channel for 52.7 days." Compl. ¶ 40.<br><br>(all emphasis added) |
| **Dispute Mechanism** | Final Determination by BDO. Section 5.3. | Indemnification. Section 12.2 |
| **Damages** | An amount to be determined at trial for alleged breaches of Section 5.3(h) of the Transaction Agreement. FAC ¶ 57.<br><br>An amount to be determined at trial for alleged breach of the Transaction Agreement concerning the NDC Labeler Code. FAC ¶¶ 63-64.<br><br>An amount to be determined at trial for alleged breach of the implied covenant of good faith and fair dealing associated with the Transaction Agreement. FAC ¶ 73.<br><br>An amount to be determined at trial for alleged fraudulent inducement to settle Closing Net Working Capital in December 2023. FAC ¶¶ 87-88.<br><br>An amount to be determined at trial for alleged unjust enrichment | $5,078,000 for, inter alia, "increased costs to obtain the prenatal vitamin products in light of Lang's plans to discontinue supply and resulting lost profits due to the delay in supply." Compl. ¶¶ 27, 53-54.<br><br>$5,473,000 for "the substantially increased pricing for the continued supply" of the drug from Sever. Compl. ¶¶ 36, 56-58.<br><br>$975,586 for "lost cash flow, among other costs" relating to TXMD's maintenance of excess inventory in the channel beyond the representation and covenant in the Transaction Agreement. Compl. ¶¶ 40-42.<br><br>Damages for all financial losses caused by TXMD's fraud, including out-of-pocket expenses, lost profits, and punitive damages. Compl. ¶ 67. |

| | relating to alleged sales practices. FAC ¶¶ 94-99. | |
|---|---|---|

In sum, there are two independently dispositive reasons why the first-to-file rule does not apply. As a result, TXMD's requested remedy (*i.e.*, dismissal of Mayne's Complaint) is unavailable.

## B. MAYNE ADEQUATELY PLED ITS FRAUDULENT INDUCEMENT CLAIM

### 1. Mayne Alleged Fraudulent Inducement with Particularity

A party claiming fraudulent inducement must allege with particularity: (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction in justifiable reliance on the representation; and (5) damage to the plaintiff as a result of such reliance. *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *31 (Del. Ch. Dec. 3, 2018) ("Under Delaware law, the elements of fraudulent inducement and fraud are the same."). "The factual circumstances that must be stated with particularity refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation." *Liborio III, L.P. v. Artesian Water Co., Inc.*, 306 A.3d 529 (Table), at *10 (Del. 2023); *see also Bookwalter*, 946 F.3d at 176 (describing pleading with particularity as providing "the who, what, when, where, and how of the events at issue" (internal quotation marks and citations omitted)).

The Transaction Agreement containing the relevant misrepresentations bolsters rather than undermines Mayne's fraudulent inducement claim. "'When a party sues based on a written representation in a contract . . . it is relatively easy to plead a particularized claim of fraud' . . .

'because the plaintiff can readily identify who made what representations where and when, because the specific representations appear in the contract.'" *Online HealthNow, Inc. v. CIP OCL Invs., LLC*, 2021 WL 3557857, at *9–10 (Del. Ch. Aug. 12, 2021) (internal citations omitted). Thus, after identifying the specific false representations in the contract (including the date of signing and the inducement that occurred), "[Plaintiffs] 'need only allege facts sufficient to support a reasonable inference that the representations were knowingly false.'" *Id.* (citing *Prairie Cap. III, L.P. v. Double E Hldg. Corp.*, 132 A.3d 35, 62 (Del. Ch. 2015)). "Intent and state of mind may be averred generally," even in a fraudulent inducement context. *Desert Equities, Inc. v. Morgan Stanley Leveraged Eq. Fund, II, L.P.*, 624 A.2d 1199, 1208 (Del. 1993); *see also Van Roy v. Sakhr Software Co.*, 2014 WL 3367275, at *4 (D. Del. July 8, 2014). Thus, plaintiffs must merely "allege sufficient facts from which it can reasonably be inferred that [the falsity] was knowable and that the defendants were in a position to know it." *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).

Mayne has met this standard. In its Complaint, Mayne identified TXMD's misrepresentations in the Transaction Agreement that concealed the true state of the assets that TXMD was to sell to Mayne. Specifically, Mayne alleged fraudulent inducement relating to misrepresentation of a supplier's future product volume: "In Section 7.15 of the Transaction Agreement, TXMD falsely represented that none of the Material Suppliers—expressly including Lang—notified TXMD as of closing that they would stop or decrease the rate at which they had historically supplied products to TXMD." Compl. ¶ 24. Yet, "Mayne discovered after closing that Lang provided notice to TXMD of its intent to discontinue its supply of product to TXMD beginning in June 2023. This notice was conveyed to TXMD prior to the closing, including by e-mail on December 5, 2022. Upon information and belief, Lang and TXMD engaged in

conversations or other communications regarding Lang's intention to terminate its supply to TXMD beginning before Mayne and TXMD executed the Transaction Agreement on December 4, 2022." *Id.* ¶ 25. Given this alleged timing and the alleged communications between Lang and TXMD, Mayne alleged that "TXMD's false assurance that Lang would not stop or decrease the rate of its supply to TXMD was intended to induce Mayne into signing the agreement." *Id.* On the face of the Complaint, Mayne has pled with particularity the who, what, when, where, and how of the misrepresentations, *see Online Health Now, Inc.*, 2021 WL 3557857, at *9–10, along with sufficient facts to infer that TXMD was in a position to know about the falsity of the representation that no suppliers had indicated they reduce their product supply, *see Abry P'rs V, L.P.*, 891 A.2d at 1050.

Additionally, Mayne alleged fraudulent inducement relating to misrepresentation of the terms of an agreement with a key supplier: "[W]ithout notifying Mayne . . . TXMD extended new and unfavorable pricing terms to Sever prior to Closing, modifying the most critical term of the Sever Agreement and rendering [it] incomplete, outdated, inaccurate, and untrue at the time of Closing." Compl. ¶ 31. Further, "on information and belief, TXMD's provision of new pricing terms to Sever began in discussions between TXMD and Sever regarding potential amendments before December 4, 2022," the date the parties executed the Transaction Agreement. *Id.* Again, Mayne alleged that "[b]ecause TXMD knew of its negotiations with Sever leading to new pricing terms before the Transaction Agreement was executed, TXMD's misrepresentation of the Sever Agreement was intended to induce Mayne into signing the agreement." *Id.* This component of Mayne's fraudulent inducement claim is pled with adequate particularity and sufficient facts to infer TXMD's knowledge of the relevant falsity. *See Online Health Now, Inc.*, 2021 WL 3557857, at *9–10; *Abry P'rs V, L.P.*, 891 A.2d at 1050.

- 12 -

"Generally ... an allegation of fraud is legally sufficient ... if it informs defendants of the precise transactions at issue, and the fraud alleged to have occurred in those transactions, so as to place defendants on notice of the precise misconduct with which they are charged." *Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2020 WL 5816759, at *14 (Del. Ch. Sept. 30, 2020) (citation omitted). Here, any claim to the contrary by TXMD regarding Mayne's complaint simply falls flat. Mayne's fraudulent inducement claim has been pled with particularity.

### 2.     Mayne's Fraud Claim Is Not a Bootstrapped Breach of Contract Claim

TXMD appears to misunderstand the nature of a bootstrapped claim. It is true that "a contracting party may not 'bootstrap' a breach of contract claim into a fraud claim 'merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intended to perform.'" *Swipe Acq. Corp. v. Krauss*, 2020 WL 5015863, at *11 (Del. Ch. Aug. 25, 2020); *see also Smash Franchise P'rs, LLC v. Kanda Hldgs., Inc.*, 2020 WL 4692287, at *16 (Del. Ch. Aug. 13, 2020) ("A bootstrapped fraud claim thus takes the simple fact of nonperformance, adds a dollop of the counterparty's subjective intent not to perform, and claims fraud."). That is not what Mayne has alleged in its Complaint.

Delaware courts have made "clear that improper bootstrapping does not occur: (1) where a plaintiff has made particularized allegations that a seller knew contractual representations were false or lied regarding the contractual representation, (2) where damages for plaintiff's fraud claim may be different from plaintiff's breach of contract claim, (3) when the conduct occurs prior to the execution of the contract and thus with the goal of inducing the plaintiff's signature and willingness to close on the transaction, or (4) when the breach of contract claim is not well-pled such that there is no breach claim on which to 'bootstrap' the fraud claim." *Pilot Air Freight, LLC v. Manna Freight Sys.*, 2020 WL 5588671, at *26 (Del. Ch. Sept. 18, 2020) (internal quotations and citations omitted); *Columbus Life Ins., Co. v. Wilmington Tr. Co.*, 2023 WL 1956868, at *10 (Del. Super.

- 13 -

Ct. Feb. 13, 2023) (same); *see also, Mosaic US Holdings LLC v. Atlas Tech. Sols., Inc.*, 2025 WL 483064, at *6 (Del. Super. Ct. Jan. 22, 2025) (denying motion to dismiss fraudulent inducement claim and rejecting bootstrapping argument because plaintiff sufficiently alleged defendant knowingly made false contractual representations); *Levy Fam. Invs., LLC v. Oars + Alps LLC*, 2022 WL 245543, at *8 (Del. Ch. Jan. 27, 2022) ("[A] plaintiff who well-pleads that a defendant made a knowingly false contractual representation for the purpose of inducing reliance has pled an act separate and distinct from the breach of contract and, in doing so, has avoided the anti-bootstrapping rule.").

In *Swipe Acquisition Corp.*, plaintiff-buyer Swipe alleged that defendant-seller Kraus concealed the loss of a major customer shortly before consummating the sale of the company, and asserted claims for breach of contract, fraud, and violation of a California statute. *Swipe Acquisition Corp.*, 2020 WL 5015863, at *4. The fraud claim was "primarily based on the representations and warranties in Section 3.21 that the Company did not have notice or knowledge that any of its Major Customers or Major Indirect Customers intended to cease or substantially reduce demand for PLI's products, and concealment of that knowledge, which induced Buyers to enter into the transaction." *Id.* at *10. Addressing a bootstrapping argument in the context of a motion to dismiss, the court held that the bootstrapping rule did not apply because: (1) plaintiff had made particularized allegations that defendant knew the statements in Section 3.21 were false by alleging that the defendant was notified pre-contract-execution that it was going to lose the First Data-Amazon business; and (2) plaintiff "might be entitled to greater damages through its fraud claim than its breach of contract claim" given the deductible in the agreement. *Id.* at *11-12. Like Swipe, here Mayne has alleged that it was fraudulently induced to enter the Transaction Agreement based upon TXMD's knowingly false contractual representations and its deliberate and willful

concealment of a reduction in supply from a Material Supplier (*i.e.*, Lang) and extension of new and unfavorable pricing to Sever. *Id*. at *12 ("These allegations distinguish Plaintiff's fraud claim from its breach of contract claim and are more than adequate to state a claim for fraud.").

Defendant's case law does not save its argument. For example, Defendant cites *Hiller & Arban, LLC v. Reserves Management LLC*, 2016 WL 3678544 (Del. Super. Ct. July 1, 2016) for the proposition that a contract claim does not become a fraud claim when a plaintiff merely alleges that another party never intended to perform its end of the bargain. OB at 8. In *Hiller & Arban*, plaintiff law firm brought a breach of contract and fraud claim against a client that failed to pay outstanding legal fees. The court found that plaintiff's fraud claim failed as it was premised on the allegation that the defendant's misrepresentations "intended to induce [the firm] to *continue* its services on behalf of [the defendant]." *Id.* at *4 (emphasis in original). However, noting that courts consider temporality when faced with this question, the court highlighted that "[a]llegations related to the *inducement* to contract have been recognized as 'separate and distinct' conduct, while those focused on inducement of continued performance are generally impermissible." *Id.* (emphasis added). Further, the plaintiffs in *Hiller & Arban* failed to "allege Defendants misrepresented any *facts*." *Id.* at *5. In contrast, Mayne's Complaint is clear that its fraud claim stems from the omissions and misrepresentations of material facts made by TXMD to induce Mayne to enter into the Transaction Agreement—not that TXMD induced Mayne's "continued performance" of its obligations under the Transaction Agreement after closing. *See Hiller & Arban at *5.* In other words, it is the exact type of claim the *Hiller & Arban* court acknowledged could be permissible. *Id.* at *4.

Defendant similarly relies on *Cornell Glasgow, LLC v. La Grange Properties, LLC*, 2012 WL 2106945 (Del. Super. Ct. June 6, 2012) for a nearly identical premise—that a claim that

"defendants never intended to perform" on the contract does not raise an actionable claim for fraud. OB at 9. There, plaintiff construction firm Cornell alleged that defendant firm La Grange hatched and executed a fraudulent plan to eject Cornell from the parties' joint development project, in violation of their contract. *Cornell Glasgow*, 2012 WL 2106945, at *3-4. The court rejected Cornell's fraud claim as a repackaged breach of contract claim: "Cornell alleges that defendants delayed payment of Cornell's invoices, an obligation imposed by the Development Agreement, and then induced Cornell's continued performance by promising payment upon receipt of additional information from Cornell." *Id.* at *8. These allegations were not "collateral" to the contract, but rather "memorialized some of La Grange's principal obligations" under the contract. *Id.* (cleaned up). However, in the case at hand, as noted *supra*, Mayne's complaint alleges with specificity TXMD's actions taken to induce Mayne's entrance into the Transaction Agreement itself—not a fraud perpetuated after the closing of the agreement to cause Mayne to continue to uphold its end of the bargain.

Contrary to TXMD's briefing, Mayne's fraud claim is not based on "the same factual allegations" as its breach of contract claims. OB at 8. Nor does Mayne simply take TXMD's nonperformance and add a conclusory allegation of TXMD's subjective intent not to perform under the Transaction Agreement. Instead, Mayne has alleged with particularity that TXMD deliberately misled it about the state of its supplier relationships and pricing terms with the intention of inducing Mayne to enter the Transaction Agreement. That allegation must be construed as true and it is sufficient to withstand TXMD's motion to dismiss.

### 3.    Mayne's Fraud Claim Alleges Separate Damages

To successfully plead a fraud claim when also pleading a breach of contract, the plaintiff must allege that it sustained damages as a result of the defendant's fraud, and those damages allegations may not simply "rehash" the damages allegedly caused by defendant's breach of

contract. *Cornell Glasgow, LLC*, 2012 WL 2106945, at *9. That is, plaintiff must show that "the damages pled under each cause of action are distinct." *4C, Inc. v. Pouls*, 2014 WL 1047032, at *7 (D. Del. Mar. 5, 2014) (citing *AFH Holding Advisory, LLC v. Emmaus Life Sci., Inc.,* 2013 WL 2149993, at *13 (Del. Super. Ct. May 15, 2013)).

Mayne has separately alleged damages for both its breach of contract claims and its fraudulent inducement claim. In Count I, Mayne alleges that as a direct and proximate cause of TXMD's breach of the Transaction Agreement related to the Lang supplier agreement, Mayne has been injured in an amount of at least $5,078,000. Compl. ¶¶ 53-54. This amount represents, among other things, "increased costs to obtain the prenatal vitamin products in light of Lang's plans to discontinue supply and resulting lost profits due to the delay in supply." *Id.* ¶ 27. In Count II, Mayne alleges that as a direct and proximate result of TXMD's breach of the Transaction Agreement related to the Sever Agreement, Mayne has been injured in an amount of at least $5,473,000. *Id.* ¶¶ 56-58. This amount represents "the substantially increased pricing for the continued supply" of the drug from Sever. *Id.* ¶ 36. In other words, these damages stem from TXMD's breach of the Transaction Agreement itself.

Separately, Mayne alleges fraudulent inducement with respect to entering into the Transaction Agreement under the final terms of that agreement. Mayne alleges in Court IV that "[a]s a result of Mayne's reasonable reliance on TXMD's misrepresentations and omissions, Mayne suffered damages for all financial losses caused by the fraud, including out-of-pocket expenses, lost profits, and punitive damages." *Id.* ¶ 67. These are not the damages from responding to TXMD's breach of the Transaction Agreement itself. Rather, these damages stem from the fraudulent inducement to accept the terms of the Transaction Agreement based on the material misrepresentation and omissions of TXMD.

- 17 -

TXMD correctly notes that "Mayne's fraud claim also pleads punitive damages," but its follow-on observation and accompanying case law—that "the mere addition of punitive damages is insufficient to state a claim separate and apart from the breach of contract claim"—is misplaced. OB at 9. As an attempted illustration, TXMD cites *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209 (Del. Super. Ct. Mar. 13, 2017). There, plaintiffs sued for breach of contract, alleging damages of "pre- and post- judgment interest on its claim, in addition to the attorney's fees and costs expended for this lawsuit." *Id.* at *6. Plaintiffs also brought a fraudulent inducement claim (relating to entry into a contract with defendants) and alleged damages "in an amount to be proved at trial, including punitive damages, attorney's fees, and costs" *Id.* The court found that plaintiffs sufficiently pled distinct claims, based on the timeline of the allegations, *id.* at *5, but that EZLinks failed to allege separate damages, beyond the addition of punitive damages, *id.* at *7. The substance of the damages were, essentially, the same for both of EZLinks' claims. *See also Cornell Glasgow*, 2012 WL 2106945, at *8-9 (similarly finding that the substance of the damages between the contract and fraudulent inducement claim at issue were essentially the same).

But in Mayne's case, rather than a rehash, the alleged fraudulent inducement damages are "distinct" from those related to TXMD's contractual breach—both temporally and substantively. *4c, Inc.*, 2014 WL 1047032, at *7. Mayne's allegations of lost profits (among other categories of damages) connected to the fraudulent inducement contrast on their face and in their essence with the alleged damages related to remediation of the impacts of TXMD's breach of the Transaction Agreement. As such, Defendant's argument for dismissal of the fraudulent inducement claim on this ground also fails.

## VI.    CONCLUSION

For these reasons, this Court should deny Defendant's Motion to Dismiss in its entirety.

OF COUNSEL:

**ARNOLD & PORTER KAYE
SCHOLER LLP**
Aaron F. Miner (admitted *pro hac vice*)
Matthew F. Medina (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019
Phone: 212.836.8000
aaron.miner@arnoldporter.com
matthew.medina@arnoldporter.com

**MORRIS, NICHOLS, ARSHT
& TUNNELL LLP**

/s/ *S. Mark Hurd*
S. Mark Hurd (#3297)
Jacob M. Perrone (#7250)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Phone: (302) 658-9200
shurd@morrisnichols.com
jperrone@morrisnichols.com

*Counsel for Plaintiff Mayne Pharma LLC*

August 18, 2025