# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAYNE PHARMA LLC, <br><br> Plaintiff, <br><br> v. <br><br> THERAPEUTICSMD, INC., <br><br> Defendant. | C.A. No. 25-670-RGA |

### DEFENDANT THERAPEUTICSMD'S REPLY BRIEF
### IN SUPPORT OF ITS MOTION TO DISMISS (D.I. 11)

**SMITH KATZENSTEIN & JENKINS LLP**

Julie M. O'Dell (No. 6191)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
jmo@skjlaw.com
dat@skjlaw.com

*Attorneys for Defendant TherapeuticsMD, Inc*

Dated: September 8, 2025

**TABLE OF CONTENTS**

TABLE OF CITATIONS ................................................................................................................ iii

I.  NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.  SUMMARY OF ARGUMENT ........................................................................................ 1

III. REPLY COUNTERSTATEMENT OF FACTS................................................................ 1

IV. ARGUMENT..................................................................................................................... 2

    A.  The Second Action Should Be Dismissed Under the First-to-File Rule ................ 2

        1.  The first-to-file rule applies in the same district court............................... 2

        2.  Mayne's claims in the Second Action are compulsory counterclaims to the First Action and should be filed there........................ 3

    B.  Mayne's Fraud Claim Should Be Dismissed with Prejudice .................................. 5

        1.  Mayne's bootstrapping argument fails because the Complaint does not seek rescission ................................................................................ 5

        2.  The fraud claims do not plead separate damages........................................ 7

        3.  The fraud claim is not pleaded with particularity ...................................... 8

V.  CONCLUSION................................................................................................................ 10

# TABLE OF CITATIONS

**Cases**

*4C, Inc. v. Pouls*,
  2014 WL 1047032 (D. Del. Mar. 5, 2014) .................................................................. 8

*Abry Partners V, L.P. v. F & W Acquisition LLC*,
  891 A.2d 1032 (Del. Ch. 2006).............................................................................. 6, 9

*Anschutz Corp. v. Brown Robin Capital, LLC*,
  2020 WL 3096744 (Del. Ch. June 11, 2020)......................................................... 5, 6

*Cornell Glasgow, LLC v. La Grange Properties, LLC*,
  2012 WL 2106945 (Del. Super. Ct. June 6, 2012) ..................................................... 7

*Crosley Corp. v. Hazeltine Corp.*,
  122 F.2d 925 (3d Cir. 1941)....................................................................................... 2

*EZLinks Golf, LLC v. PCMS Datafit, Inc.*,
  2017 WL 1312209 (Del. Super. Ct. Mar. 13, 2017) ................................................... 8

*Freedom Mortgage Corp. v. Irwin Fin. Corp.*,
  2009 WL 763899 (D. Del. Mar. 23, 2009) ................................................................ 4

*Grider v. Keystone Health Plan Cent., Inc.*,
  500 F.3d 322 (3d Cir. 2007)....................................................................................... 4

*Nat'l Equip. Rental, Ltd. v. Fowler*,
  287 F.2d 43 (2d Cir. 1961).......................................................................................... 4

*Online HealthNow, Inc. v. CIP OCL Investments, LLC*,
  2021 WL 3557857 (Del. Ch. Aug. 12, 2021) ............................................................. 9

*Serco Servs. Co., L.P. v. Kelley Co.*,
  51 F.3d 1037 (Fed. Cir. 1995).................................................................................... 2

*Smith v. S.E.C.*,
  129 F.3d 356 (6th Cir. 1997) ..................................................................................... 4

*Swipe Acquisition Corp. v. Krauss*,
  2020 WL 5015863 (Del. Ch. Aug. 25, 2020) ....................................................... 6, 10

**Rules**

Fed. R. Civ. P. 13................................................................................................................ 5

**I.     NATURE AND STAGE OF THE PROCEEDINGS**

TXMD submits this reply brief in further support of its motion to dismiss Civil Action No. 25-670-RGA (the "Second Action") under the first-to-file rule and Count IV of the Second Action for failure to state a claim. (Second Action, D.I. 11, D.I. 12)

**II.    SUMMARY OF ARGUMENT**

1.     The Second Action should be dismissed. The first-to-file rule applies equally to cases in different courts as it does to cases in the same court. Moreover, the Second Action is duplicative of the First, because it asserts what would otherwise be compulsory counterclaims to the First Action.

2.     Mayne's fraud claim (Count IV) in the Second Action should be dismissed for failure to state a claim. It is improperly bootstrapped, because it does not plead facts distinct from the already-pleaded breach of contract claims in Counts I and II and because it does not plead the rescissory damages necessary to fall under the *Abry* exception claimed by Mayne. The fraud claim also does not plead damages distinct from breach of contract and should be dismissed on this independent basis. Finally, the compound pleading in Complaint lacks particular facts supporting all of the required elements of a fraud claim and should also be dismissed for this reason.

**III.   REPLY COUNTERSTATEMENT OF FACTS**

1.     Since Mayne includes a 2-page long table in its answering brief presenting information (without citation) about TXMD's FAC in the First Action (D.I. 15 at 7–10), TXMD presents the following counterstatement of facts.

2.     Mayne misrepresents in its answering brief that Count I of the FAC in the First Action is "(1) Breach of Contract (overselling demand leading to increased returns of TXMD Inventory)[.]" (D.I. 15 at 8) This is incorrect. Count I of the FAC alleges breach of § 5.3(h) of the

TA for failure to provide the reporting required under the contract. (C.A. No. 25-440-RGA, D.I. 16 at ¶¶ 53–64 (the "First Action"))

3. Mayne also misrepresents in its answering brief that all of the claims in the FAC in the First Action arise out of § 5.3 of the TA. As presented in TXMD's opening brief, this is untrue. (D.I. 12 at 6–7)

4. Mayne further misrepresents in its answering brief that the only "dispute mechanism" available to the claims associated with the FAC in the First Action is "Final Determination by BDO Section 5.3[.]" (D.I. 15 at 9) TXMD disputes that all claims in the FAC can be resolved by BDO or the provisions of § 5.3. (*E.g.*, First Action, D.I. 18 at 3–5) In fact, TXMD avers that none of the claims raised in the FAC can be resolved by the accounting firm. (*Id.* at 12–15)

## IV.    ARGUMENT

### A.    The Second Action Should Be Dismissed Under the First-to-File Rule

#### 1.    The first-to-file rule applies in the same district court

Mayne attempts to create an exception to the first-to-file rule out of thin air, arguing that the first-to-file rule does not apply when serial case filings are made in the same district court. (D.I. 15 at 5–6 & n.1) The Third Circuit was quite clear when it stated that "[t]he party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941) ; *see also Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) ("The first-filed action is preferred"). This principle applies here. TXMD filed the First Action and should be free from subsequent litigation in this Second Action over the same Transaction Agreement in dispute in the First Action.

The underlying purpose of the first-to-file rule is to promote judicial economy and to prevent inconsistent rulings. This applies equally to cases within different district courts and to cases within the same district court. While many cases discuss the rule in the context of different districts, the first-to-file rule's core principles of efficiency, consistency, and avoiding duplicative litigation are still relevant here. Since both the First Action and the Second Action involve the same parties and the same transaction (the TA), allowing both to proceed separately is inefficient.[1]

### 2. Mayne's claims in the Second Action are compulsory counterclaims to the First Action and should be filed there

Since Mayne's claims in the Second Action would be waived if not raised as compulsory counterclaims in the First Action, this Second Action is duplicative of the first and should be dismissed. Mayne devotes several pages of its answering brief misrepresenting the disputes in the First Action and parsing the differences between the two complaints. (D.I. 15 at 6–10) Essentially, Mayne contends that the Second Action is not duplicative of the First Action, because the claims "do not 'hinge' on the enforceability of the same contractual provisions" (*id.* at 7 (quoting *Freedom Mortgage Corp. v. Irwin Fin. Corp.*, 2009 WL 763899, at *5 (D. Del. Mar. 23, 2009)) and that a resolution of the First Action would not "eliminate most or all of the issues to be determined in the other," (*id.* (citing *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 334 n.6 (3d Cir. 2007))). Neither of these cited cases have similar facts or support the conclusion that the First Action and the Second Action are not duplicative.

---

[1] This inefficiency appears in this litigation, with Mayne filing multiple motions in the First Action (First Action, D.I. 8 (motion to compel), D.I. 21 (motion to dismiss)) in addition to filing this Second Action. Mayne's briefing in these matters has been replete with lengthy, page-long string cites articulating legal standards (*e.g.*, D.I. 15 at 5). And Mayne's answering brief on this motion to dismiss the Second Action tests the limits of page length under the Local Rules.

In fact, the Third Circuit has addressed the question of what constitutes a duplicative suit for the purposes of the first-to-file rule and has concluded that a duplicative suit either involves "identical claims" to the first-filed suit or "compulsory counterclaims" to the first-filed suit. *See Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 334 n.6 (3d Cir. 2007) ("Here, the *Love* and *Solomon* cases were filed by plaintiffs who have no involvement whatsoever with the *Grider* case. And the claims in *Love* and *Solomon* are neither identical claims, nor compulsory counterclaims in *Grider.* As such, the District Court's injunction order cannot be supported by citing the first filed rule."); *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997) (same); *see also Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961) ("Of the two causes of action which appellants allege in their Alabama action, the first is identical to appellants' defensive counterclaim in the prior, the New York, action; the second, fraud in the inducement of the agreement, arises from the same transaction of lease, and is pleadable in the New York action as a compulsory counterclaim.").

Mayne's citation to *Freedom Mortgage* is misplaced. In that case, Judge Sleet applied the first-to-file rule on the basis that the two actions shared identical claims under the first prong of the *Grider* rule, because the cases "share[d] the same facts." *Freedom Mortgage Corp. v. Irwin Fin. Corp.*, 2009 WL 763899, at *5 (D. Del. Mar. 23, 2009). In this case, neither party asserts that the facts of the First and Second Actions are identical,[2] and thus *Freedom Mortgage* is irrelevant.

Similarly, Mayne's conclusory citation to the footnote in *Grider* is inapposite on the facts, because in *Grider* the later cases were filed by different plaintiffs "who ha[d] no involvement whatsoever in the *Grider* case." *Grider*, 500 F.3d at 334 n.6. These differences meant that in

---

[2] TXMD clearly contends that Mayne's claims in this Second Action are compulsory counterclaims to the First Action. (D.I. 12 at 1–2)

4

*Grider*, the resolution of one matter would not impact another; therefore, the first-to-file rule did not apply. *Id.* Here, the First Action and the Second Action involve identical parties, and *Grider* actually supports applying the first-to-file rule, because Mayne's claims in the Second Action concern the same case or controversy as the First Action (the TA) and are, therefore, compulsory counterclaims to the First Action.³ Fed. R. Civ. P. 13(a)(1). Therefore, the Second Action is duplicative of the First Action and should be dismissed under the first-to-file rule.

### B. Mayne's Fraud Claim Should Be Dismissed with Prejudice

TXMD's opening brief presented three independent grounds on which to dismiss Count IV: bootstrapping, lack of separate damages, and lack of particularity. Each of these independently supports dismissal of Count IV, and on this basis, Mayne's fraud claim should be dismissed.

#### 1. Mayne's bootstrapping argument fails because the Complaint does not seek rescission

Mayne claims that the *Abry* exception to Delaware's bootstrapping rule applies to this case.⁴ (D.I. 15 at 13–14) This is wrong, because Mayne does not seek rescission of the contract. On this basis, Count IV, Mayne's fraud claim, should be dismissed.

"As a general rule, . . . [w]hen a party claims he was fraudulently induced into entering a contract by promises that were then included in the negotiated language of that very contract, his remedy should be in contract, not tort." *Anschutz Corp. v. Brown Robin Capital, LLC*, 2020 WL 3096744, at *15 (Del. Ch. June 11, 2020). There are limits to the bootstrap rule, for example, when

---

³ If Mayne's claims were not raised as counterclaims in the First Action, they would likely be waived.

⁴ *See* D.I. 15 at 13, quoting a rule discussed in *Pilot Air Freight, LLC v. Manna Freight Sys., Inc.*, 2020 WL 5588671, at *26 & n.244 (Del. Ch. Sept. 18, 2020) and tracing to *Abry*. Of note, the *Pilot Air Freight* case does not contain a holding relating to bootstrapping of a fraud claim on top of an already-pleaded breach of contract claim, because Vice Chancellor Slights concluded that "no breach of contract claim implicated by the fraud claims has survived dismissal. There is, therefore, no claim to which the fraud claims can be bootstrapped." *Id.* at *26.

5

a plaintiff seeks to remedy fraud through rescission of a contract, the Court of Chancery has held that "the public policy of this State will not permit the Seller to insulate itself from the possibility that the sale would be **rescinded** if the Buyer can show either: 1) that the Seller knew that the Company's contractual representations and warranties were false; or 2) that the Seller itself lied to the Buyer about a contractual representation and warranty." *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1064 (Del. Ch. 2006) (emphasis added); *see also Anschutz Corp.*, 2020 WL 3096744, at *15 (finding that "Buyer's so-called contractual fraud claims fall within the *Abry* exception" when plaintiff sought "a remedy for fraud based in rescission, or rescissory damages, not compensatory damages"). This exception does not apply to Mayne's fraud claim, because the Complaint does not seek rescission as a remedy. (D.I. 1 at 15)

   Mayne cites the *Swipe Acquisition* case as analogous (D.I. 15 at 14–15), but this citation is misplaced for two reasons. First, there is no evidence that plaintiff in that matter sought rescission or that the court applied the *Abry* exception. Second, the court in *Swipe Acquisition* concluded that the rule against bootstrapping *did not apply*, not that the case fell under an exception to the rule. In that case, Vice Chancellor Fioravanti noted that plaintiff pleaded particularized allegations separate and distinct from the facts supporting the breach of contract claims, namely that "[t]he Complaint alleges that Krauss was notified that the Company was losing its Amazon business on May 8, 2018 and communicated to another employee that if the Buyer learned that fact, 'the deal would be over!' Krauss is alleged to have choreographed a due diligence call between the Buyers and First Data that avoided disclosure of the loss of the Amazon business." *Swipe Acquisition Corp. v. Krauss*, 2020 WL 5015863, at *11 (Del. Ch. Aug. 25, 2020) (footnotes omitted); *see also id.* at *2–*3 (describing these specific allegations in detail). Here, the Complaint does not seek rescission of the TA, and hence the *Abry* exception does not apply. Moreover, as explained in the

6

opening brief (D.I. 12 at 7–9), the Complaint does not allege any facts specifically supporting Mayne's allegations of fraud that are separate and distinct from the breach of contract claims. The answering brief provides no further insight or citation to specific portions of the Complaint identifying which specific facts Mayne contends support the fraud claim. (D.I. 15 at 14–15) Absent clear citation, TXMD declines to speculate.

Mayne's other case citations are equally lacking. (*Id.* at 15–16) The *Hiller & Arban* case is cited for its statement of rules, but TXMD does not argue that it is analogous to the facts at hand. (D.I. 12 at 8) As for *Cornell Glasgow*,[5] Mayne's assertion of the temporal differences in that case are irrelevant (D.I. 15 at 16) and the case nonetheless applies, because even when considering the answering brief Mayne has not identified where in the Complaint it pleads the elements of fraud separate and distinct from breach of contract. *Cornell Glasgow, LLC v. La Grange Properties, LLC*, 2012 WL 2106945, at *8 (Del. Super. Ct. June 6, 2012). On these bases, Count IV should be dismissed.

### 2. The fraud claims do not plead separate damages

Mayne does not dispute that it seeks punitive damages in addition to the "lost profits due to the delay in supply" of products manufactured by Lang in Count I of the Complaint (D.I. 1 at ¶ 27) and "the substantially increased pricing [or lost profits] for the continued supply of ANNOVERA®" in Count II (*id.* at ¶ 36). Rather, Mayne states, without any explanation, that in Count IV it "suffered damages for all financial losses caused by the fraud, including out-of-pocket expenses, lost profits, and punitive damages" (*id.* at ¶ 67) that are—somehow—separate and

---

[5] Notably, *Cornell Glasgow* is one of 4 cases cited by TXMD in its opening brief. (D.I. 12 at 8–9) Mayne does not discuss any of these other cases in its answering brief. (D.I. 15 at 13–16)

7

distinct from the damages associated with the alleged breaches of contract (D.I. 15 at 16–18). This argument does not make sense.

The *EZ Links Golf* case remains on point. In that matter, the plaintiff claimed identical damages claims that differ solely in the form of punitive damages, which the court found to be insufficient to maintain a fraudulent inducement claim alongside a breach of contract claim. *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *6–7 (Del. Super. Ct. Mar. 13, 2017) (footnote citations omitted). Mayne further attempts to distinguish *EZLinks* by arguing that its fraud damages are "'distinct' from" the allegations of breach of contract "both temporally and substantively." (D.I. 15 at 18 (citing *4C, Inc. v. Pouls*, 2014 WL 1047032, at *7 (D. Del. Mar. 5, 2014)) The *4C* case also does not support Mayne's position. In that case, the court granted defendant's summary judgment motion and dismissed the fraud claim, reasoning "it is evident that Plaintiff is simply rehashing the damages it alleges it suffered by Defendants' breach [of contract.]" *4C, Inc. v. Pouls*, 2014 WL 1047032, at *6–7 (D. Del. Mar. 5, 2014). Similarly, in this case, Mayne states that it is not rehashing its breach of contract damages but only identifies contractual damages in the form of "lost profits" and "increased expenses" plus the addition of "out of pocket expenses" and "punitive damages" which are insufficient to distinctly claim damages for fraud in view of the accompanying breach of contract claims. For this independent reason, Count IV should be dismissed.

### 3.     The fraud claim is not pleaded with particularity

In the event the Court concludes that Mayne has not bootstrapped its fraud claim and has sufficiently pleaded separate damages, Count IV nonetheless is not pleaded with particularity. This claim is based upon conclusory allegations unsupported by any facts. (D.I. 1 at ¶¶ 62–67) In its answering brief, Mayne excuses this bare pleading by citing to cases where contractual fraud is alleged in the absence of a breach of contract claim. (D.I. 15 at 10–13) Mayne contends that it only

needs to allege that the representations in the TA were false to satisfy Rule 9(b)'s particularity requirement. This is wrong for at least two reasons. First, "[w]hile knowledge may be pled generally, when a plaintiff pleads a claim of fraud that charges that the defendants knew something, it must allege sufficient facts from which it can reasonably be inferred that this 'something' was knowable and that the defendants were in a position to know it." *Abry Partners*, 891 A.2d at 1050. Second, Mayne must also plead facts that demonstrate how it was induced into entering into the TA based upon these allegedly false representations. *See Online HealthNow, Inc. v. CIP OCL Investments, LLC*, 2021 WL 3557857, at *9 (Del. Ch. Aug. 12, 2021) ("Plaintiffs have identified the specific false representations contained in the SPA, including when the SPA was signed and how Defendants induced Bertelsmann to accept a significantly overinflated price in reliance upon these false representations.").

Under this standard, Mayne has not pleaded fraud with particularity. Specifically, Mayne does not make any specific factual allegations demonstrating or supporting the inference that TXMD knew the statements were false on December 4, 2022, that TXMD intentionally prevented Mayne from learning these facts prior to December 4, 2022, and that TXMD knowingly made false statements to Mayne prior to December 4, 2022, that were intended to induce Mayne to sign the TA. Instead, the Complaint makes compound statements that combine multiple fact patterns into conclusory allegations. (*E.g.*, D.I. 1 at ¶ 66 ("On information and belief, TXMD knew or should have known about Lang's discontinuation of supply and Sever's amendment pricing terms before TXMD and Mayne executed the Transaction Agreement on December 4, 2022.")) This is neither clear nor particular.

The *Swipe Acquisition* case cited by Mayne is instructive. In that case, the complaint alleged contractual fraud but not breach of contract. The defendant challenged particularity, and

9

the court concluded that Rule 9(b) was satisfied, because "[t]he Complaint alleges that Krauss was notified that the Company was losing its Amazon business on May 8, 2018 and communicated to another employee that if the Buyer learned that fact, 'the deal would be over!' Krauss is alleged to have choreographed a due diligence call between the Buyers and First Data that avoided disclosure of the loss of the Amazon business." *Swipe Acquisition*, 2020 WL 5015863, at *11. Here, unlike *Swipe Acquisition*, the Complaint only makes conclusory allegations upon information and belief and pleads no facts supporting any of these allegations. For example, there is no specific allegation of when TXMD knew these facts, there is no allegation of a "the deal would be over!" email, and there is no specific allegation that prior to December 4, 2022, TXMD made any knowingly false statements intended to induce Mayne to enter into the TA. Therefore, the claim is not pleaded with particularity and should be dismissed.

## V.   CONCLUSION

For the reasons stated above, Mayne's complaint in this Second Action should be dismissed. Alternatively, Count IV of Mayne's complaint should be dismissed with prejudice.

Dated: September 8, 2025

SMITH KATZENSTEIN & JENKINS LLP

/s/ Daniel A. Taylor
Julie M. O'Dell (No. 6191)
Daniel A. Taylor (No. 6934)
1000 N. West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
jmo@skjlaw.com
dat@skjlaw.com

*Attorneys for Defendant TherapeuticsMD, Inc*

10