IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAYNE PHARMA LLC,            )
                                  )
         Plaintiff,          )
                                  )
        v.                 )   C.A. No. 25-670-RGA
                                  )
THERAPEUTICSMD, INC.,      )
                                  )
        Defendant.       )

## REPORT AND RECOMMENDATION

Presently before the Court is the motion of Defendant TherapeuticsMD, Inc. ("Defendant" or "TherapeuticsMD") to dismiss all counts of the Complaint. (D.I. 11). For the reasons set forth below, the Court recommends that Defendant's motion be GRANTED-IN-PART and DENIED-IN-PART.

## I.    BACKGROUND

Plaintiff Mayne Pharma LLC ("Mayne") is a specialty pharmaceutical company that commercializes a comprehensive portfolio of branded and generic drugs throughout the United States. (D.I. 1 ¶ 9). According to the Complaint, on December 4, 2022, Mayne and TherapeuticsMD entered into a series of agreements whereby Mayne agreed to purchase from TherapeuticsMD the exclusive licenses for certain women's health products, including ANNOVERA®, IMVEXXY®, BIJUVA® and a portfolio of prenatal vitamins, as well as selected "Commercialization Assets," including inventory, supplier relationships and regulatory filings to support the operation and commercialization of the portfolio. (*Id.* ¶ 16). One of those agreements – the Transaction Agreement – governed the sale, transfer and conveyance of assets deemed necessary or useful for Mayne to sell, market, distribute, manufacture and otherwise commercialize the licensed products. (*Id.*; *see also* D.I. 1, Ex. A (Transaction Agreement)).

Relevant to this motion, TherapeuticsMD sued Mayne for breach of the Transaction Agreement first.[1]  Specifically, on April 8, 2025, TherapeuticsMD filed a Complaint in a separate action in this District, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent inducement and unjust enrichment.  *See TherapeuticsMD, Inc. v. Mayne Pharma LLC*, C.A. No. 25-440-RGA (D. Del.) ("the First Action").  The First Action was assigned to United States District Judge Richard G. Andrews.  On May 30, 2025, Mayne filed in the First Action (1) a motion to compel expert determination (or arbitration) and to stay proceedings pending a final determination and (2) a motion to dismiss for failure to state a claim.  (First Action, D.I. 8, 9, 10 & 11).  TherapeuticsMD then filed a First Amended Complaint, and Mayne renewed its motion to dismiss for failure to state a claim.  (First Action, D.I. 16, 21 & 22).[2]

On May 30, 2025, the same day that Mayne initially filed its motions in the First Action, Mayne filed the Complaint in this action ("the Second Action").  (D.I. 1).  In this case, Mayne alleges three distinct breaches of the Transaction Agreement by TherapeuticsMD.  First, Mayne alleges that TherapeuticsMD misrepresented that third-party Lang Pharma Nutrition, Inc. ("Lang") would continue to supply prenatal vitamins for Mayne despite Lang planning to discontinue such supply.  (*Id.* ¶¶ 22-27 & 51-54 (Count I)).  Second, Mayne alleges that TherapeuticsMD failed to disclose that third-party Sever Pharma Solutions AB ("Sever") was provided "new and unfavorable pricing terms" for the supply of ANNOVERA® prior to Mayne's closing.  (*Id.* ¶¶ 28-36 & 55-58 (Count II)).  And third, Mayne alleges that TherapeuticsMD misrepresented (*i.e.*,

---

[1]   As Mayne emphasizes in its answering brief (D.I. 15 at 6-10), the First Action concerns different provisions of the Transaction Agreement and different underlying conduct – specifically, Mayne's alleged overselling of market demand and improper transfer of the NDC Labeler Code back to TherapeuticsMD.

[2]   Today, the undersigned issued a Memorandum Order on Mayne's motion to compel and a Report and Recommendation on Mayne's renewed motion to dismiss in the First Action.

underrepresented) the amount of ANNOVERA® and BIJUVA® inventory maintained at several of its distributors. (*Id*. ¶¶ 37-42 & 59-61 (Count III)). Additionally, based on the purported misrepresentations with respect to Lang and Sever (Counts I and II), Mayne also alleges that TherapeuticsMD fraudulently induced Mayne into entering the Transaction Agreement. (*Id*. ¶¶ 62-67 (Count IV)). The Second Action was also assigned to United States District Judge Richard G. Andrews.

On July 28, 2025, TherapeuticsMD filed the present motion to dismiss all claims in the Second Action under the first-filed rule and to dismiss the fraudulent inducement claim (Count IV) under Federal Rules of Civil Procedure 12(b)(6) and 9(b). (*See* D.I. 11 & 12). Briefing was complete on September 8, 2025. (D.I. 15 & 16).

## II.    <u>LEGAL STANDARD</u>

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, C.A. No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

## III.    DISCUSSION

TherapeuticsMD seeks dismissal of all three breach of contract claims (Counts I-III) and the fraudulent inducement claim (Count IV) under the first-filed rule. TherapeuticsMD also seeks dismissal of the fraudulent inducement claim (Count IV) for failure to state a claim. The Court begins with the first-filed rule.

### A.    First-Filed Rule

TherapeuticsMD argues that this Second Action should be dismissed pursuant to the first-filed rule because the First Action involves the same parties and the same case or controversy. (D.I. 12 at 5-7; D.I. 16 at 2-5). The parties generally dispute whether the first-filed action applies in situations where, as here, the two actions are filed in the same federal court and the claims are not overlapping in subject matter. (*Compare* D.I. 15 at 4-10 (Mayne opposing dismissal under first-filed rule as inappropriate because the Second Action was filed in the same federal court and raises different issues than those raised in the First Action), *with* D.I. 16 at 2-5 (in reply, TherapeuticsMD arguing that first-filed rule applies to actions pending in same district court and that Mayne's claims in the Second Action are compulsory counterclaims to the First Action and should be filed there)). The Court agrees that dismissal under the first-filed rule is inappropriate here.

The first-filed rule's "primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 977 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). As the Third Circuit has explained:

> That rule is a comity-based doctrine stating that, when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority. In some cases, "first-filed" courts have relied on the rule to enjoin litigation in other jurisdictions. In other cases, "second-filed" courts have cited the rule to defer consideration of a matter until proceedings have concluded elsewhere. Application of the rule is discretionary. If a second-filed court decides to invoke the rule, it also has the discretion to decide whether to stay, transfer, or dismiss the case before it. . . . [I]n the vast majority of cases, a court exercising its discretion under the first-filed rule should stay or transfer a second-filed suit. Even a dismissal **without prejudice** may create unanticipated problems. A dismissal **with prejudice** will almost always be an abuse of discretion.

*Chavez v. Dole Food Co.*, 836 F.3d 205, 210, 221 (3d Cir. 2016) (en banc) (footnote omitted).

Ultimately, the Court agrees with those courts within the Third Circuit that have found application of the first-filed rule inappropriate where, as here, both actions are pending before the same court. *See Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 523 (E.D. Pa. 2012) ("PPO has not cited, nor is this Court aware of, any case in which a federal court within the Third Circuit has applied the first-filed rule when two actions were pending before the same court."); *see also Devorin v. Tata Consultancy Servs., Ltd.*, No. 2:24-CV-06648 (BRM) (JRA), 2025 WL 1291660, at *6 (D.N.J. May 5, 2025); *Elliott v. Williams*, No. CV 21-2290, 2022 WL 22907179, at *1 n.1 (E.D. Pa. May 19, 2022); *Glunk v. Noone*, No. 1:16-CV-01147, 2016 WL 7159221, at *2 n.3 (M.D. Pa. Dec. 8, 2016). Moreover, because the two actions here are pending before the same judge, inconsistency in legal determinations does not warrant application of the rule. *Cf. Alvarez v. Gold Belt, LLC*, No. CIV.08-4871 (NLH) (KMW), 2009 WL 1473933, at *3 (D.N.J. May 26, 2009) (staying action under first-filed rule pending resolution of class certification issue before different judge in same court, noting "[o]f additional and greater concern is the potential for inconsistency in the determination of the legal issues").

5

As to TherapeuticsMD's compulsory counterclaim argument, that was presented for the first time in reply. (D.I. 16 at 3-5). In the Court's view, a handwaving statement in an opening brief that Mayne's claims are "essentially counterclaims" to the First Action (D.I. 12 at 2) is insufficient to raise the argument that the counterclaims were compulsory and therefore should have been asserted in the First Action. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("[A] passing reference to an issue . . . will not suffice to bring that issue before this court." (quoting *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1066 (3d Cir. 1991)). It was only in reply that TherapeuticsMD put any effort into developing this compulsory-counterclaim theory. The argument is thus waived. *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150, 157 (3d Cir. 2014); *EIS, Inc. v. WOW Tech Int'l GmbH*, C.A. No. 19-1227-LPS, 2020 WL 7027528, at *7 (D. Del. Nov. 30, 2020) ("Because these new arguments and new authority were presented for the first time on reply, Defendants' positions are untimely and are deemed waived." (citing D. Del. LR 7.1.3(c)(2))).

Even if the Court were to consider the argument, however, the compulsory-counterclaim rule would not warrant dismissal, as TherapeuticsMD suggests. (D.I. 15 at 3-5). Both First and Second Actions are still pending, and Mayne has not filed an Answer in the First Action. *See Zero Techs., LLC v. Clorox Co.*, 713 F. Supp. 3d 40, 64 (E.D. Pa. 2024) ("Courts have consistently held that failure to plead a compulsory counterclaim bars a later independent action on that claim, but have not been clear as to its pre-judgment impact or what its interplay is with the first-to-file doctrine."). Because the policy underlying the compulsory-counterclaim rule is one of "judicial economy," *Transamerica Occidental Life Insurance v. Aviation Office of America, Inc.*, 292 F.3d 384, 389 (3d Cir. 2002), application of the rule here would instead warrant consolidation of the First and Second Actions. *See Premier Payments*, 848 F. Supp. 2d at 524 (consolidating instead

6

of dismissing second-filed action pending in same court after finding that compulsory-counterclaim rule applies); 6 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1418 (3d ed. 2025) ("Of course, if both actions are pending before the same federal court, they can be consolidated in whatever manner is most convenient for the purpose of trial.").[3]

Because dismissal would be inappropriate here, the Court recommends that TherapeuticsMD's motion to dismiss under the first-filed rule be denied.

### B.      Fraudulent Inducement (Count VI)

TherapeuticsMD argues that Mayne's claim for fraudulent inducement in Count IV should be dismissed for impermissibly bootstrapping a fraud claim onto breach of contract claims, for failing to plead separate damages from its breach of contract claims and for failing to meet the particularity requirements of Rule 9(b).  (D.I. 12 at 7-11; D.I. 16 at 5-10).  The Court ultimately agrees that dismissal is warranted because Mayne fails to adequately plead separate damages.[4]

Under Delaware law, "in cases involving both a breach of contract and an allegation of fraud, damages from the fraud must be pled 'separate and apart from . . . breach damages.'" *Norman v. Elkin*, 860 F.3d 111, 130 (3d Cir. 2017) (quoting *Cornell Glasgow, LLC v. La Grange*

---

[3]      Although neither party requests (or even addresses) consolidation, the Court believes that consolidation of the First and Section Actions pursuant to the "broad discretion" granted by Rule 42(a) seems appropriate here.  *In re Livingston*, No. 25-2280, 2025 WL 2694093, at *1 n.2 (3d Cir. Sept. 22, 2025) (citing *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 100, 102 (3d Cir. 2015)).  Because both actions are at virtually the same stage, involve the same parties, and center upon the same contract, all three considerations of efficiency, expenses and fairness weigh in favor of consolidation.  *See Cirba Inc. v. VMWARE, Inc.*, C.A. No. 19-742-LPS, 2020 WL 7489765, at *6 (D. Del. Dec. 21, 2020) (reciting consolidation factors); *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977) ("When a court learns that two possibly duplicative actions are pending on its docket, consolidation may well be the most administratively efficient procedure.").

[4]      Because the Court finds that Mayne has failed to plead separate damages from its breach of contract claims, the Court does not reach TherapeuticsMD's other arguments.

*Props., LLC*, No. N11C-05013JRS, 2012 WL 2106945, at *9 (Del. Super. Ct. June 6, 2012)).  To successfully plead a fraud claim, "the damages allegations may not simply 'rehash' the damages allegedly caused by the breach of contract."  *Cornell*, 2012 WL 2106945, at *9 (citing *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. CIV.A. 762-N, 2005 WL 2130607, at *7 (Del. Ch. Aug. 26, 2005)).  Failure to plead separate damages is an "independent ground for dismissal."  *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, No. N16C-07-080, 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017) (citing *Cornell*, 2012 WL 2106945, at *9).

Added together, Counts I, II and III seek breach of contract damages equaling $11,526,586. (D.I. 1 ¶ 54 ("at least $5,078,000" in damages for Count I); ¶ 58 ("at least $5,473,000" in damages for Count II); ¶ 61 ("at least $975,586" in damages for Count III)).  The Complaint requests damages in an amount to be determined at trial but no "less than $11,526,586." (D.I. 1 at Prayer for Relief § (a)).  Count IV, without specifying a dollar amount, reiterates the allegations from Counts I and II[5] and seeks fraudulent-inducement damages for "all financial losses caused by the fraud, including out-of-pocket expenses, lost profits, and punitive damages." (*Id*. ¶¶ 62-67).  There are no plausible factual allegations regarding separate damages arising from the fraudulent inducement.  Indeed, the sum total of all damages requested by the Complaint is no "less than $11,526,586" – a sum that could be entirely comprised of the damages for the three breach of contract claims added together.  Mayne's fraudulent inducement damages thus appear to be merely

---

[5]    Mayne's fraudulent inducement claim appears based on purported misrepresentations about Lang and Sever. (*Compare* D.I. 1 ¶ 53 (Count I alleging breach of contract based on "misrepresenting to Mayne that Lang would continue to supply products to TXMD and Mayne"), *and* ¶ 57 (Count II alleging breach of contract based on "failing to inform Mayne of the modification of material pricing terms between TXMD and Sever"), *with id*. ¶ 63 (Count IV alleging fraudulent inducement based on misrepresentations that Lang would continue to supply products to TherapeuticsMD and Mayne), *and* ¶¶ 64-65 (Count IV alleging fraudulent inducement based on failure to inform Mayne of the modification of material pricing terms between TherapeuticsMD and Sever)).

a "rehash" of its breach of contract damages. *See First Wheel Mgmt. Ltd. v. Inventist, Inc.*, C.A. No. 17-1059-MN, 2021 WL 3363504, at *3 (D. Del. Aug. 3, 2021) ("[Plaintiff] seeks damages in the amount of two million dollars for both its breach of contract claim and for the Fraud Claims. . . . Thus, the Complaint does not plead fraud damages separate and apart from the breach damages."). Although Mayne adds punitive damages onto its fraud claim, the "mere addition of punitive damages to its fraudulent inducement charge is not enough to distinguish it from the contract damages." *EZLinks*, 2017 WL 1312209, at *6.

In its answering brief, Mayne argues that its alleged fraudulent inducement damages are "both temporally and substantively" distinct from its breach of contract damages. (D.I. 15 at 18 (citing *4C, Inc. v. Pouls*, C.A. No. 11-778-JEI-KMW, 2014 WL 1047032, at *7 (D. Del. Mar. 5, 2014))). Mayne argues that Count IV does not seek damages from the alleged breach of contract itself but rather "from the fraudulent inducement to accept the terms of the Transaction Agreement based on the material misrepresentation and omissions of TXMD." (D.I. 15 at 17). Mayne cites no authority supporting its "temporally and substantively" distinction, and the Court finds none. And Mayne's cited authority (*4C, Inc. v. Pouls*) actually supports dismissal because, like here, the plaintiff in that case sought the same amount in damages for its breach of contract and fraud claims, making it "evident that Plaintiff is simply rehashing the damages it alleges it suffered by Defendant's breach." *4C*, 2014 WL 1047032, at *7. The Court thus recommends that the fraudulent inducement claim (Count IV) be dismissed.

To the extent that Mayne wishes to amend its pleading to cure the deficiencies identified herein, it may seek leave to amend using the proper procedure for doing so. *See LabMD, Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022) ("A plaintiff properly requests amendment by asking the

district court for leave to amend and submitting a draft of the amended complaint, so that the court can judge whether amendment would be futile." (citation omitted)).

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's motion to dismiss (D.I. 11) be GRANTED-IN-PART and DENIED-IN-PART.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1.  Any objections to the Report and Recommendation shall be limited to ten (10) pages and filed within fourteen (14) days after being served with a copy of this Report and Recommendation.  *See* FED. R. CIV. P. 72(b)(2).  Any responses to the objections shall be limited to ten (10) pages and filed within fourteen (14) days after the objections.  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated:  March 23, 2026

_____
UNITED STATES MAGISTRATE JUDGE

10