IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAYNE PHARMA LLC,

Plaintiff,

v.

THERAPEUTICSMD, INC.,

Defendant.

No. 1:25-cv-00670-CFC

**PLAINTIFF MAYNE PHARMA LLC'S RESPONSE TO
DEFENDANT'S OBJECTIONS TO THE REPORT & RECOMMENDATION (D.I. 22)**

Plaintiff Mayne Pharma LLC ("Plaintiff" or "Mayne") respectfully submits this response to Defendant TherapeuticsMD, Inc.'s ("Defendant" or "TXMD") objections to Magistrate Judge Tennyson's Report and Recommendation (D.I. 22, referred to hereinafter as the "R&R") recommending that TXMD's motion to dismiss be granted-in-part and denied-in-part.

**INTRODUCTION**

TXMD objects to the Magistrate Judge's R&R recommending denial of TXMD's motion to dismiss this action under the first-to-file rule and recommending consolidation of this action with C.A. No. 25-440-CFC (the "TXMD case"). TXMD's objections lack merit. Even under the *de novo* standard of review applicable to dispositive R&Rs, TXMD cannot overcome the fundamental deficiency in its position: It has never cited—in rounds of briefing and now in its objections—a single case applying the first-to-file rule where both actions are pending in the same federal district court before the same judge. Its fallback compulsory counterclaim theory was properly found waived because TXMD first developed it in reply, and, in any event, it fails on the merits because Mayne has not yet filed an Answer in the TXMD case and the two cases involve

different contractual provisions, different underlying conduct, and different time periods. As set forth below, Mayne agrees with the R&R's recommendation that the motion to dismiss should be denied, but it respectfully submits that the Magistrate Judge's *sua sponte* consolidation recommendation should not be adopted—the two actions involve fundamentally different claims, different procedural postures, and different discovery needs, and consolidation was never requested or briefed by either party. Mayne also opposes TXMD's alternative request to stay this action, which was never properly moved for, has already been considered and rejected by the Magistrate Judge, and rests on a circular prejudice argument that would delay Mayne's prosecution of claims with no connection to the BDO expert determination process. Mayne respectfully requests that the Court deny the motion to dismiss and allow this action to proceed independently.

## STANDARD OF REVIEW

In civil matters, "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion [including motions to dismiss] excepted in subparagraph (A)[.]" 28 U.S.C. § 636(b)(1)(B). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. at § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) (same).

## ARGUMENT

**I.     THE MAGISTRATE JUDGE WAS CORRECT: THE FIRST-TO-FILE RULE DOES NOT APPLY**

TXMD's principal objection is that the R&R erred in denying dismissal under the first-to-file rule. (Obj. at 3–4). TXMD contends that because it filed its case before Mayne, and because both cases involve the same parties and the same Transaction Agreement, Mayne's case should be

dismissed under the first-to-file rule. In its objection, TXMD argues that "[t]his case does not warrant a new exception to the first-to-file rule." (Obj. at 3). This entirely misses the point identified by Mayne in its motion briefing and confirmed by the Magistrate Judge in the R&R— the first-to-file rule does not apply where, as here, both cases are pending in the same federal district court before the same judge. The legal issue in dispute is not whether an exception applies, but whether the rule itself applies in the first instance.

The first-to-file "rule is a comity-based doctrine stating that, when ***duplicative lawsuits*** are filed successively in two ***different federal courts***, the court where the action was filed first has priority." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 210 (3d Cir. 2016) (*en banc*) (emphasis added). The comity concerns that animate the rule—respect for a coordinate court's jurisdiction, avoidance of duplicative proceedings in separate forums, and prevention of judge-shopping—are simply not present when both actions are assigned to the same judge in the same courthouse. *See id*. at 210, 220-22. TXMD has never cited a single case applying the first-to-file rule in this posture, despite having had three opportunities to do so—in its opening brief (D.I. 12), its reply brief (D.I. 16), and now its objections (D.I. 23). By contrast, federal courts in this Circuit and across the country have repeatedly and squarely rejected this application.[1] TXMD's objection does not engage with this authority, let alone offer any reasoned basis for departing from it.

TXMD further objects to the R&R's finding that it waived its compulsory counterclaim argument. Specifically, TXMD contends that its reply brief was "the first time TXMD became

---

[1] *See, e.g.*, *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 523 (E.D. Pa. 2012); *Arctic Cat, Inc. v. Polaris Indus. Inc.*, 2014 WL 5325361, at *14 (D. Minn. Oct. 20, 2014); *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 2015 WL 11018002, at *25 (D. Minn. Apr. 20, 2015); *Jones v. Singing River Health Servs. Found.*, 2015 WL 12672726, at *3 (S.D. Miss. June 5, 2015); *see also Olin Corp. v. Continental Cas. Co.*, 2011 WL 1337407, at *2 (D. Nev. Apr. 6, 2011).

aware of Mayne's arguments in support of filing the Second Action" and thus the first opportunity to develop the theory. (Obj. at 4). This argument misapprehends the burden of a movant. The motion to dismiss was TXMD's own motion, and TXMD bore the burden of presenting all its theories in its opening brief. The R&R correctly found that TXMD's opening brief contained only "a handwaving statement" that Mayne's claims are "essentially counterclaims" (R&R at 6), which was "insufficient to raise the argument that the counterclaims were compulsory and therefore should have been asserted in the First Action." (*id.*). It was only in reply that TXMD devoted several pages to the compulsory counterclaim theory. (D.I. 16 at 3–5). Under well-established Third Circuit precedent, arguments first developed in reply are waived. *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150, 157 (3d Cir. 2014); *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("[A] passing reference to an issue . . . will not suffice to bring that issue before this court.") (quoting *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1066 (3d Cir. 1991)); *EIS, Inc. v. WOW Tech Int'l GmbH*, 2020 WL 7027528, at \*7 (D. Del. Nov. 30, 2020). TXMD's proffered excuse—that it could not have anticipated Mayne's arguments—inverts the structure of motion practice. A movant does not wait for the opposing party's response before deciding what legal theories support its own motion; the compulsory counterclaim doctrine is a well-known principle of federal civil procedure, and if TXMD believed Mayne's claims were compulsory counterclaims, it was obligated to develop that argument from the outset. Indeed, TXMD's opening brief acknowledged that Mayne's claims were "essentially counterclaims" (D.I. 12 at 2), demonstrating awareness of the theory but a conscious choice not to develop it. The R&R is correct in finding waiver.

Even if the Court were to excuse TXMD's waiver (which it should not), the compulsory counterclaim theory fails on the merits for multiple independent reasons. As the R&R correctly

observed, the compulsory counterclaim rule has no procedural mechanism for application at this stage. Fed. R. Civ. P. 13(a) operates as a waiver mechanism: A party that fails to assert a compulsory counterclaim *in its answer* forfeits the right to bring it in a separate action. *See Transamerica Occidental Life Ins. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002). Mayne has not yet filed an Answer in the TXMD case, so there has been no failure to plead a counterclaim and no waiver to enforce. *See Zero Techs., LLC v. Clorox Co.*, 713 F. Supp. 3d 40, 64 (E.D. Pa. 2024) ("Courts have consistently held that failure to plead a compulsory counterclaim bars a later independent action on that claim, but have not been clear as to its pre-judgment impact or what its interplay is with the first-to-file doctrine."). TXMD's objection that this creates "a roadmap for duplicative and inefficient litigation" (Obj. at 4) ignores the reality that Rule 13(a) is triggered by the filing of an answer—not by the mere existence of a case between the same parties involving different issues and claims under the same contract. TXMD asks this Court to apply a forfeiture sanction before the predicate act (filing an answer without counterclaims) has occurred, which is not how the rule works.

Additionally, even assuming Rule 13(a) could somehow be applied prospectively (it cannot), Mayne's claims are not compulsory counterclaims. A counterclaim is compulsory only if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). Mayne's claims involve different contractual provisions, different time periods (pre-closing conduct versus post-closing performance), different categories of evidence, different witnesses, and different damages. Under the "logical relationship" test applied by the Third Circuit, claims are compulsory only "when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Transamerica*, 292 F.3d at 389; *see also Metallgesellschaft AG v. Foster Wheeler*

*Energy Corp.*, 143 F.R.D. 553, 558 (D. Del. 1992) ("to determine whether a 'logical relationship' exists between an opposing party's claim and a counterclaim" involves analysis of several factors including "1) Are the issues in fact and law raised by the claim and counterclaim largely the same?; 2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?; and 3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?"). That Mayne's pre-closing misrepresentation claims and TXMD's post-closing Net Working Capital true-up claims both arise under the same Transaction Agreement does not make them logically related—the claims involve fundamentally different conduct, different obligations, and different injuries. Indeed, the facts underlying the parties' respective claims are entirely *un*connected and require different types of discovery from different entities. TXMD's claims will require finance and sales witnesses and accounting experts, while Mayne's claims will primarily involve witnesses involved in the negotiation and execution of the Transaction Agreement and third-party discovery from Lang and Sever.

## II.    NEITHER CONSOLIDATION NOR A STAY IS APPROPRIATE HERE

TXMD reads the R&R as affirmatively recommending consolidation. That is not Mayne's reading. The R&R indirectly noted *sua sponte*, in a footnote, that "[a]lthough neither party requests (or even addresses) consolidation, the Court believes that consolidation of the First and Section [sic] Actions pursuant to the 'broad discretion' granted by Rule 42(a) seems appropriate here." (R&R at 7 n. 3). This statement was included as part of the Magistrate Judge's analysis that "the compulsory-counterclaim rule would not warrant dismissal, as TherapeuticsMD suggests" but "would instead warrant consolidation of the First and Second Actions." (R&R at 6). As noted in the R&R, the Court therefore received no adversarial briefing on whether consolidation is appropriate under the Rule 42(a) factors and the recommendation rests on a single footnote rather than a developed analysis. Before ordering consolidation of two independently filed actions with

different claims, different procedural postures, and different discovery needs, the Court should at minimum have the benefit of the parties' views. For that reason, to the extent that the Court views the R&R to affirmatively recommend consolidation under Rule 42, Mayne joins TXMD in opposing that part of the R&R. (Obj. at 2) ("TXMD objects to the Magistrate Judge's . . . recommended case consolidation.").

TXMD alternatively argues in its objection that "[s]hould the Court opt to consolidate the matters, it should stay" Mayne's case. (Obj. at 4). This request is procedurally deficient, substantively baseless, and internally inconsistent with TXMD's own positions in the TXMD-filed case. As a threshold matter, TXMD never moved to stay Mayne's case. TXMD instead moved to *dismiss* this action under the first-to-file rule and, alternatively, for failure to state a claim. (D.I. 11; D.I. 12). The request to stay appears for the first time as a throwaway alternative in the final paragraphs of TXMD's Rule 72 objections. (D.I. 23 at 5). TXMD never briefed the applicable stay factors, never presented evidence of prejudice, and the Magistrate Judge was never asked to analyze whether a stay of this action was warranted. The Court should not grant discretionary relief that was never properly sought, briefed, or considered below.

On the substance, the Magistrate Judge already considered the question of whether Mayne's case should be stayed and deliberately declined to impose one. In footnote 5 of the Memorandum Order in the TXMD case, the Magistrate Judge expressly addressed the relationship between the two actions, stating that "the provisions of the Transaction Agreement at issue [in the Mayne case] do not require submission to BDO, and any short stay of these proceedings has real no [sic] impact on that litigation." (Case No. 1:25-cv-00440, D.I. 33 at 14 n.5). This was not an oversight—it was a considered judgment that the two cases involve different claims warranting different procedural treatment. The TXMD stay exists for a specific and narrow reason: the Net

Working Capital true-up disputes underlying TXMD's claims must be submitted to BDO under Section 5.3(c). Mayne's entirely different claims in this action have no connection whatsoever to BDO, the Closing Net Working Capital, or Section 5.3. The dispute resolution mechanism for Mayne's claims is the indemnification process under Section 12.2 of the Transaction Agreement, not the Section 5.3 expert determination. There is no contractual or legal basis for staying claims that are entirely outside the scope of the BDO process merely because a separate set of unrelated claims in a different action has been referred to that process.

TXMD's prejudice argument is circular. TXMD contends that it will be prejudiced because the TXMD case is stayed while this action proceeds, resulting in "different schedules and timelines." (Obj. at 5). But the TXMD stay is a direct consequence of TXMD's own contractual obligations under Section 5.3(c)—the very provision TXMD agreed to when it executed the Transaction Agreement. TXMD cannot bootstrap the consequences of its own bargain into a basis for delaying Mayne's unrelated claims. Moreover, TXMD has identified no concrete prejudice beyond the abstract concern about asymmetric timelines. TXMD has not pointed to any overlapping discovery, any risk of inconsistent rulings on common issues, or any other specific harm that would result from this action proceeding while the BDO process runs its course in the TXMD case.

TXMD's position is also inconsistent. In the TXMD case, TXMD objects to the stay, arguing that it is prejudicial and should be overturned. (Case No. 1:25-cv-00440, D.I. 34 at 10). Here, TXMD argues that an additional stay should be imposed on Mayne's claims. TXMD is simultaneously arguing that stays are harmful when applied to its own case and necessary when applied to Mayne's case. The only way to reconcile these positions is that TXMD wants its claims

to proceed while Mayne's claims are delayed—which is not a principled legal argument but rather a transparent litigation tactic. The Court should not condone this sort of gamesmanship.

Finally, TXMD speculates that the BDO expert determination "is anticipated to take significantly longer than the 45 days cited by the Magistrate Judge" (Obj. at 5), but this unsupported assertion cannot justify staying an entirely separate action involving entirely separate claims. The Transaction Agreement states that the parties "will request that [BDO] deliver its resolution in writing" within 45 calendar days of its engagement (D.I. 1, Ex. A § 5.3(c)), and TXMD's speculation about delay does not overcome the contractual language. Even if the BDO process takes longer than anticipated, that is a case-management issue for the TXMD case—it has no bearing on whether Mayne should be permitted to prosecute its independent claims in this action. For all these reasons, TXMD's request to stay this case should be denied.

## CONCLUSION

For the foregoing reasons, Mayne respectfully requests that the Court deny TXMD's motion to dismiss and allow this action to proceed independently.

**Dated**: April 20, 2026

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

OF COUNSEL:

ARNOLD & PORTER KAYE
 SCHOLER LLP
Aaron F. Miner (*pro hac vice*)
Matthew F. Medina (*pro hac vice*)
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
aaron.miner@arnoldporter.com
matthew.medina@arnoldporter.com

*/s/ S. Mark Hurd*
S. Mark Hurd (#3297)
Jacob M. Perrone (#7250)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
shurd@morrisnichols.com
jperrone@morrisnichols.com

*Attorneys for Plaintiff Mayne Pharma LLC*

- 10 -